Syllabus.

## Wytheville.

### ANNIE G. TRAYLOR V. ATKINSON, ET AL.

June 16, 1921.

1. APPEAL AND ERROR—*Moot Question—Case at Bar.*—Suit was
    brought by a daughter, as administratrix of the estate of her
    mother and in her own right, for the settlement of the estate
    and the partition sale of a lot. At the time the bill was filed
    there was pending in the same court another suit attacking the
    validity of a deed under which testatrix claimed title to the lot.
    Final decree was entered in this second suit, dismissing the
    bill, and ending the attack on the title of testatrix before decree
    of sale of the lot was rendered. Purchaser at the sale, how-
    ever, contended that the right of appeal in this second suit
    constituted a cloud on her title.

    *Held:* That, although the right of appeal in the second suit had
    expired by lapse of time and the parties to that suit had waived
    their rights in writing, the decision of the lower court adverse
    to the purchaser on the question of cloud before the disap-
    pearance of the cloud was reviewable, and had not become moot
    in the appellate court.

2. JUDICIAL SALES—*Cloud on Title—Pending Suit Attacking Title.*—
    *Case at Bar*—Suit was brought by a daughter, as administra-
    trix of the estate of her mother and in her own right, for the
    settlement of the estate and the partition sale of a lot. Pur-
    chaser claimed that another suit attacking a deed in the claim
    of title to the property was a cloud on her title.

    *Held:* That, as the second suit was referred to in the bill in
    the present cause, the purchaser was charged with knowledge
    of the existence and purpose of that suit, and upon confirma-
    tion of sale she took title subject thereto. If the right of ap-
    peal in the second suit constituted a defect, purchaser was
    bound to raise the question, if at all, before confirmation of the
    sale.

3. JUDICIAL SALES—*Warranty—Caveat Emptor.*—The court never un-
    dertakes to warrant the title to land sold under its decree, and
    a purchaser at a judicial sale buys at his own risk. This gen-
    eral rule, however, is subject to the qualification that a pur-

chaser at a judicial sale is entitled to relief on the ground of fraud or after-discovered mistake of material facts.

Appeal from a decree of the Chancery Court of the city of Richmond. Decree for complainant. Petitioner appeals.

*Affirmed.*

The opinion states the case.

*R. E. Byrd, R. B. Gwathmey* and *Fulton & Wicker,* for the appellant.

*Brockenbrough Lamb, C. V. Meredith* and *R. H. Talley,* for the appellee.

KELLY, P., delivered the opinion of the court.

The question in this case is whether the appellant, Mrs. Annie G. Traylor, is entitled to be released from the purchase of certain real estate, sold and confirmed to her under a judicial sale. The lower court held that she was not so entitled, and thereupon she obtained this appeal.

The material facts are these: Mrs. Belle V. Atkinson had a complete record title to the lot known as 811 East Grace street, in the city of Richmond, subject to certain uncontested encumbrances not material here, and disposed of the same by will. This suit was brought in the Chancery Court of the city of Richmond by Ethel Walker Atkinson, in her own right and as administratrix c. t. a. of the estate of her mother Belle V. Atkinson, for a settlement of the estate and a partition sale of the lot. The bill was filed in October, 1919. On that date there was pending in the same court another suit wherein Lucy Claire Dudley, a daughter, and Henry Dudley, a grandson of the testatrix (the latter being under age and suing by next friend), were attacking the validity of the deed under which she claimed title to the lot. The bill in the present suit alleged that the suit of

*Dudley* v. *Atkinson* had been "decided in favor of the defendants and confirms the title and ownership of Belle V. Atkinson, but the final decree in the said suit has not yet been entered." A few days later, on October 23, 1919, a final decree was entered therein, dismissing the bill, and thus ending the attack on the title of the testatrix, no suspension being asked or provided for, and the decree therefore becoming effective at once. No appeal from that decree was sought, and it appears that none was ever contemplated.

On August 13, 1920, Henry Dudley, who had then attained his majority, and Lucy Claire Dudley expressly waived their right of appeal by written agreement under seal; and furthermore, when this appeal was argued, the right of appeal in the Dudley suit was barred by the expiration of the statutory period of one year.

In the meantime, under a decree of sale in the instant case, the Grace street lot was, on February 25, 1920, sold at public auction, and the appellant, Mrs. Annie G. Traylor, offering the highest among a number of competitive bids, became the purchaser at the price of $42,500, payable all cash, or at the option of the purchaser, one-third cash, and the balance in six, twelve and eighteen months, with interest. The commissioners reported the sale to the court, and on March 1, 1920, a decree was entered confirming the sale, "subject to an examination of the title within ten days."

It appears from the report of the special commissioners that on March 12, 1920, they met Mrs. Traylor, by appointment, at the office of Mr. Lea, the attorney who had been employed by her to examine the title, the object of this meeting on the part of the commissioners being to receive settlement from Mrs. Traylor in accordance with the decree of confirmation, and that they, on that occasion, were informed that Mrs. Traylor did not at that time have the

necessary funds in cash to comply with her purchase, but would arrange to secure the same in a few days and make settlement. The special commissioners directed the attention of Mrs. Traylor and her attorney to the requirements of the decree, and an arrangement was then made pursuant to which she paid to the commissioners the sum of $4,000, and the parties fixed upon March 26, 1920, as the day upon which she would complete the settlement. No question at that time was raised as to the sufficiency of the title. On the last named date, March 26, the commissioners were informed by Mr. Lea that he had determined to advise his client not to accept the property for the reason that the final decree in the above mentioned Dudley suit had been entered less than a year prior thereto.

The foregoing facts with reference to the failure of Mrs. Traylor to comply with the terms of the sale were reported to the court, and a rule was issued against her to show cause why she should not be required to complete the settlement in conformity with her contract of purchase. In her answer to the rule she pointed out certain apparent objections to the title, but the allegations of the answer itself show that as to all of such defects she was fully protected, with the exception of the alleged cloud on the title occasioned by the possibility of an appeal from the decree of October 23, 1919, in the Dudley suit. This answer to the rule expressed a willingness to take and settle for the property as soon as the title was "free of all valid objections."

Then followed a decree on the 29th of April, 1920, holding that the objections to the title (except as to two executed but unrecorded release deeds, which were thereby ordered to be recorded) were without merit, and ordering Mrs. Traylor forthwith to comply with her purchase. This decree, however, after reciting the fact that Mrs. Traylor had elected to take advantage of the credit terms allowed by the decree of sale, directed that "the purchaser's note for the last and final one-third of the purchase money, being

the note to mature on February 25, 1921, be not disposed of or pledged by the court prior to the 23rd day of October, 1920, and that no decree of distribution be entered in this cause making or directing any distribution of said last and final one-third of the purchase money, or any part thereof, prior to the 23rd day of October, 1920." The manifest and admitted purpose of this latter provision in the decree was to protect Mrs. Traylor against any possible loss resulting from an appeal from and reversal of the final decree in the Dudley suit.

Mrs. Traylor continued in default, and on May 14, 1920, the commissioners notified her counsel that unless she should make settlement in a few days they would ask the court for an order directing a resale of the property at her risk. Following this notice, she filed her petition asking to be released entirely from her purchase, and on May 26, 1920, the court entered a decree holding that there was no merit in the petition, and ordering a resale at her risk, unless she complied with the terms of her purchase within ten days from that date. This decree, however, before making these adjudications adverse to Mrs. Traylor, recited, "that full justice cannot be done and the whole controversy ended in this cause without the presence of Henry A. Dudley as a party," and accordingly a guardian *ad litem* was appointed to defend his interests, reciting the appearance and answer of the said Dudley by his guardian *ad litem*, and the docketing and setting of the cause for hearing by consent as to him. It is admitted that the purpose of this provision, like that above referred to with reference to holding in abeyance a portion of the purchase money, was to protect Mrs. Traylor against a possible appeal from and reversal of the final decree in the Dudley suit.

Before coming to a consideration of the present appeal upon its merits, we must advert to the motion of the appellees to dismiss the same on the ground that the only point

in controversy, as to the validity of the title, has now become a moot question. The argument upon this motion is that the possibility of an appeal from the decree of October 23, 1919, in the Dudley suit is the only objection urged against the title, and that this possibility has now been precluded by the lapse of time, and particularly by the above recited written waiver of Lucy Dudley and Henry Dudley.

[1] It is perfectly clear that the question as to the right of appeal in the Dudley suit has now been ended, but it perhaps does not necessarily follow from that fact that the existence of the original defect, if defect it was, did not constitute a good defense to the rule against her, and a good ground for granting the relief asked for in her petition. It may be that substantial defects of title, if timely objection thereto be made, entitle the purchaser to an absolute release as of the time of such objection, and do not lose their efficacy in this respect upon a subsequent removal effected by fortuitous causes. In this case it is contended on behalf of Mrs. Traylor that when she asked to be released, there was a substantial defect in the title, which neither the court nor the parties could with reasonable certainty promise to remove; and that the provision which the court in its decrees of April 29 and May 26 made to this end were insufficient and of no avail. Without passing upon the soundness of this contention, we are nevertheless of opinion that although the alleged defect or cloud upon the title has now disappeared, the question as to the lower court's action thereon before such disappearance is reviewable, and in that sense has not become moot. The motion to dismiss is therefore denied.

[2] Upon the merits of the case, we have no difficulty whatever. We need not discuss the effect of the proceedings by which the court undertook to protect the purchaser against any loss resulting from possible future action by the

70

Dudleys, or either of them, subsequent to the decree of October 23, 1919. The effort on the part of the court to afford Mrs. Traylor such protection (whether sufficient for the purpose or not, we need not decide), was entirely proper and just; but Mrs. Traylor could not, as a matter of right, demand any absolute protection against the alleged defect. The Dudley suit was referred to in the bill in this cause, and Mrs. Traylor, as the purchaser under a sale made herein, was charged with knowledge of the existence and purpose of that suit, and upon confirmation of the sale she took the title subject thereto. She does not claim to have suffered from any fraud or mistake in regard to it. It is true she says in her petition that she did not know about the right of appeal which the Dudleys might have, but if such right of appeal in fact constituted a defect, she was bound to raise the question, if at all, before confirmation of the sale. The court gave her an additional ten days, for the express purpose of examination of the title. At the end of that time she made no objection on any ground and the sale then stood unconditionally confirmed. From that date she occupied the same position she would have occupied if she had purchased from a private individual under a contract for the sale of real estate entitling her to a conveyance with special warranty.

The court never undertakes to warrant the title to land sold under its decree, and a purchaser at a judicial sale buys at his own risk. The law is clearly stated, and with peculiarly appropriate application to the case at bar, by Judge Burks in *Long* v. *Weller*, 29 Gratt. (70 Va.) 347, 351, as follows:

"In Virginia, the maxim *caveat emptor* strictly applies to all judicial sales. The court undertakes to sell only the title, such as it is, of the parties to the suit, and it is the duty of the purchaser to ascertain for himself whether the title of these parties may not be impeached or superseded by

some other and paramount title; and if he have just grounds of objection for want or defect of title, he should present them to the court before the confirmation of the report of sale. Ordinarily, objection after confirmation comes too late. *Young's Adm'r & Bowyer* v. *McClung et al.* 9 Gratt. (50 Va.) 336, 358; *Threlkeld* v. *Campbell*, 2 Gratt. (43 Va.) 198; *Daniel et al.* v. *Leitch*, 13 Gratt. (54 Va.) 195, 212, 213; *Watson* v. *Hoy et al.* (not yet reported), Virginia Law Journal, August, 1877, p. 473, *et seq.*, 28 Gratt. 698.

"These authorities would seem to be a sufficient answer to the pretension set up by the appellants in their answer to the rule for resale, to the effect that at the time they purchased the land and mill property, they believed that the right to the use of the entire road mentioned in the answer was annexed or appurtenant as an easement to the property purchased by them, and that since the purchase they have discovered that a claim has been asserted by a third party, which is probably right, and will deprive them of the use of the road, and thus seriously impair the value of the property purchased by them.

"This is nothing but an objection for defect of title. The title to the easement is necessarily connected with the title to the land to which it is appurtenant; and whatever the purchasers believed, they must be taken to know that they could acquire by their purchase only the title that the court sold, which was the title, whatever it might be, of the parties to the suit. They purchased at their own risk, and cannot be heard to object for want or defect of title, at least after confirmation of the sale."

In *Berlin* v. *Melhorn*, 75 Va. 639, 641, Judge Burks again says: "We think it may be safely laid down, as a general rule, deducible from the authorities, that after a judicial sale has been absolutely confirmed by the court which ordered it, it will not be set aside except for fraud, mistake, surprise, or other cause for which equity would give like

relief, if the sale had been made by the parties in interest, instead of by the court. But where the objection is to the confirmation, the rule is more liberal."

Citations of authority to the same effect as the above might be indefinitely multiplied. We will add only these: *Hickson* v. *Rucker*, 77 Va. 135, 138; *Kirk* v. *Oakey*, 110 Va. 67, 68, 65 S. E. 528, 135 Am. St. Rep. 915; *Headley* v. *Hoopengarner*, 60 W. Va. 626, 55 S. E. 744; *Barton's* Chy. Pr. 1185; 1 Hogg's Eq. Proc., sec. 687; Lile's Eq. Pl. & Pr., sec. 264; Burks' Notes on Conveyancing. (1906), sec. 99. p. 118.

Of course this general rule is subject to the qualification that a purchaser, like a party to a private contract of sale, is entitled to relief on the ground of fraud or after-discovered mistake of material facts, but there is nothing in this case to bring it within that qualification.

The decree complained of is affirmed.

*Affirmed.*