Richmond

THOMAS H. FORRER

v.

NED BROWN

April 24, 1981.

Record No. 790491.

Present: All the Justices.

*Frederick W. Payne* (*George R. St. John Associates,* on brief), for appellant.

*W. G. Pickford* (*Pickford and Barkley,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

The decision in this suit to remove a cloud on title hinges on the sufficiency of an order of publication. The order had been entered in a prior suit which culminated in the judicial sale for delinquent real estate taxes of property that is the subject of the present suit.

The procedings giving rise to the bizarfe circumstances in this litigation commenced over 28 years ago. The facts are not disputed;

they are gleaned from an examination of court papers in three prior suits relating to the subject property, lying in Albemarle County, as well as from review of the transcript of a brief ore tenus hearing held in the present case.

In the first suit, a bill in equity, pursuant to former §§ 58-1101 to -1109, Code of 1950, was filed in January of 1953 on behalf of Albemarle County to enforce a lien for delinquent real estate taxes upon the subject property, a 10.9-acre, unimproved parcel then owned by one George W. Cary. Following service of process, the cause was referred to a commissioner in chancery who subsequently made his report. The report was confirmed and George Gilmer, attorney for the County, was appointed special commissioner of sale. Thereafter, Gilmer reported he had sold the property in July of 1954 to appellee Ned Brown for $110. The sale was confirmed by the court and Gilmer was authorized to convey the land to Brown.

Subsequently, the special commissioner reported Brown had paid for the property and that he had delivered the deed to Brown. In a January 1955 final decree striking the cause from the docket, the court ratified and approved the commissioner's last report. The decree also provided, "and it being suggested to the Court from the report that Ned Brown has not yet recorded his deed, it is ordered that George Gilmer, Commissioner, on request, make a new deed to Ned Brown or whoever may be entitled to the property." A deed to Brown was not recorded at that time. During the hearing in the present case, Brown, who said he could not read or write, testified he probably destroyed the original deed by mistake.

In 1956, Brown removed the timber from the land and testified his intention at the time was to let the "land go back" and be resold for delinquent taxes because he had "got [his] money back." Brown did not pay taxes on the property for 1955 ($4.93), 1956 ($3.16) or 1957 ($3.16).

In the second suit, employing the same statutory procedure, Gilmer on behalf of the County filed another bill in equity in April of 1958 to sell four parcels, including the subject property, for delinquent taxes. Brown was not listed in the caption of the bill as a party defendant nor was he referred to in the body of the pleading. The bill referred to Cary's ownership and stated the taxes for the years in question were past due.

Based upon Gilmer's affidavit, the clerk entered the following order of publication on June 13, 1958, which was duly posted, mailed and published, *see* Code § 8-71 (1957 Repl. Vol):

"VIRGINIA: IN THE CIRCUIT COURT OF
ALBEMARLE COUNTY
COUNTY OF ALBEMARLE

v. ORDER OF PUBLICATION

EFFIE WHITE
c/o Alice Powell
Schuyler, Virginia
BOARD OF PUBLIC WELFARE
County of Albemarle
THOMAS E. SELLERS, deceased
SALLIE T. SELLERS, widow
Keene, Virginia
MARGARET T. SELLERS
Keene, Virginia
WILLIAM T. SELLERS
Keene, Virginia
GEORGE W. CARY
Scottsville District
Albemarle County, Virginia
NANNIE WOODY
Scottsville, Virginia
and their heirs and all other
persons interested in their
estates as parties unknown.

The object of this suit is to sell for delinquent taxes land in the Scottsville District of the County of Albemarle, Virginia, as follows:

2 acres assessed to Effie White
10 acres assessed to Thomas E. Sellers
10.9 acres assessed to George W. Cary
2 acres assessed to Nannie Woody

It is ordered that the above named parties appear within ten days and do what may be necessary to protect their interest."

During prosecution of the second suit, several amended bills were filed, making changes not pertinent here. Another order of publication, similar in form to the first, was entered on February 9, 1960.

There is no indication from the original papers in the cause that the latter order was posted, mailed or published. At no time was process issued to be served upon Brown, of course, and he received no notice of that proceeding.

The cause was referred to a commissioner in chancery who reported in July of 1964 that, as to the Cary parcel, all necessary parties were before the court by virtue of the *second* order of publication. Brown was not mentioned in the report.

Subsequently, as authorized by court order, Gilmer, as special commissioner, sold the subject property to appellant Thomas H. Forrer for $625 in February of 1966 and delivered to Forrer a deed to the property dated March 11, 1966. Gilmer's actions as special commissioner were confirmed in a subsequent final decree ending the second suit.

Forrer, a civil engineer and a West Virginia resident, did not record his deed upon receipt, testifying he assumed Gilmer "would have taken care of that." Forrer did not pay the real estate taxes on the property in 1966 ($2.94), 1967 ($2.70) or 1968 ($3.12). He testified he owned a tract adjacent to the subject property and assumed the amount due was included in the tax bill he received for the adjoining property.

In June of 1969, the third suit was filed by Gilmer on behalf of the County, using the same statutory procedure, to enforce the lien for 1966-68 taxes against the subject property. Named as a party defendant, Brown, a resident of Esmont, Virginia, personally was served with the subpoena in chancery on June 27, 1969. The bill of complaint referred to the 1955 purchase by Brown and stated that the deed to him "has not been recorded." Brown then paid the delinquent taxes.

Forrer was not named as a party defendant or mentioned in the third suit, and no order of publication was entered. Hence, he had no notice of that proceeding.

Subsequently, upon Brown's request, Gilmer, as "Commissioner," prepared a special warranty deed dated July 7, 1969 conveying the subject property to Brown. The deed recited the proceedings in the first suit, including the portion of the January 1955 final decree authorizing Gilmer to make Brown a "new" deed to replace the one "lost." Brown recorded the new deed on July 17, 1969. Because the taxes had been paid, the third suit was dismissed that same month.

Brown continued to pay the taxes on the subject property, which had remained unfenced, unoccupied and unimproved. On August 6, 1973, upon advice of counsel, Forrer recorded his March 1966 deed.

At that time, the county tax records were changed to show Forrer as owner of the property.

In December of 1974, Brown recorded a June 1970 plat, labelled "The Ned Brown Property," showing survey of the subject property.

The present suit was filed by Forrer in March of 1977 against Brown. Forrer requested that the July 1969 deed to Brown be removed as a cloud on his title. Following the hearing, the trial court ruled the 1969 deed to Brown, while not sufficient to pass title, was adequate to give notice to Forrer of Brown's "claim of title" because of its prior recordation. Thus, in the January 1979 final decree appealed from by Forrer, the court found that title to the subject property was "vested" in Brown. The chancellor further decreed that Forrer have a lien on the property for $625, to which action of the court Brown has assigned cross-error.

█ While numerous issues were debated during the trial and on appeal, we think the dispositive question is whether Brown was properly made a party to the second suit. The regularity of the first suit, as the result of which Brown acquired ownership of the property, is not challenged. Thus, unless the court in the second suit had jurisdiction over Brown and he was brought before the court in the manner authorized by law, the decree in that suit as to his ownership interest was utterly void. Elementary is the proposition that no person may be deprived of his property without due process of law and one of the essentials of due process is notice. *Finkel Outdoor Products, Inc.* v. *Bell,* 205 Va. 927, 931, 140 S.E.2d 695, 698 (1965).

█ Forrer argues "the County actually joined [Brown], by order of publication, as a party unknown" in the second suit. We do not agree.[1]

Code § 8-72 (1957 Repl. Vol.), now with modifications Code § 8.01-317 (1977 Repl. Vol.), provided in pertinent part:

"Every order of publication shall give the abbreviated style of the suit, state briefly its object, and require the defendants against whom it is entered, or the unknown parties, to appear within ten days after due publication thereof and do what is necessary to protect their interests. It shall be published . . . in such newspaper as the court may prescribe, or, if none be so prescribed, as the clerk may direct, and shall be posted by the clerk, at the

---

[1] The parties address the validity of the first order of publication, set out verbatim *supra,* and not the second order of publication, relied on by the commissioner in chancery in the second suit, for the obvious reason that the second order was apparently never posted, mailed or published.

front door of the courthouse of the county or corporation wherein the court is held, . . . and the clerk shall also mail a copy thereof to each of the defendants to the post-office address given in the affidavit required by the preceding section; and the clerk shall file a certificate of the fact in the papers of the case; but the court, or the judge thereof in vacation, may, in any case, if deemed proper, dispense with such publication in a newspaper."

The order of publication is in lieu of process, and its purpose is to bring the party into court, to apprise him of the nature of the proceedings against him, and to notify him that his rights will be affected by the litigation. *Peatross* v. *Gray,* 181 Va. 847, 858, 27 S.E.2d 203, 209 (1943). Because the notice is constructive only, the order of publication and the statute authorizing it both must be strictly construed. *Steinman* v. *Jessee,* 108 Va. 567, 572, 62 S.E. 275, 277 (1908).

When unknown parties are to be proceeded against, it is essential that the order of publication recite some identifying data concerning such parties. For example, the class to which the unknown parties belong or the source or origin of any claim they may have should be included; it is not sufficient to merely recite they are not known without specifying how they may be interested in the subject matter of the suit. B. Lamb, *A Virginia Cause,* 38-39 (Rev. ed. 1976). Furthermore, the newspaper in which the order is to be published must be designated in the order. *A. S. White & Co.* v. *Jordan,* 124 Va. 465, 469, 98 S.E. 24, 26 (1919).

Manifestly, the 1958 order of publication was deficient for several reasons. Initially, and of slight importance under these circumstances, it failed to "give the abbreviated style of the suit," contrary to the statutory directive, and it failed to specify the newspaper in which it was to be published, as required by *Jordan.* But, more importantly, the order was so deficient in substance that it was not reasonably probable that Brown, or someone for him, would receive notice of the proceedings in order for him to take reasonable precautions for the protection of his interest in the subject property.

It is true the order specified the object of the suit was to sell for delinquent taxes four designated parcels situated in the same magisterial district of the County with the subject property, and the four owners of record were named in the caption and body of the order. But the caption listed only two classes of parties who, according to the last sentence of the order, must appear and do what may be necessary to protect their interest. The first class are the heirs of the individuals named in the caption ("and *their* heirs"); the second class are

"parties unknown." Reasonably construed, the order defines "parties unknown" as other persons interested in descent of the estate of the individuals named in the caption ("and all other persons interested in *their* estates"). Brown was in neither class; he was not an heir of any of the defendants; he was not a person "interested" in devolution of the "estates" of the named individuals. Although Brown, or someone for him, upon review of the order, might guess the subject property was being referred to by virtue of the specified acreage as well as by inclusion of "George W. Cary" as an owner and party defendant, nevertheless, such references were not reasonably calculated to notify Brown that his rights were being altered by the litigation.

In sum, under a strict construction, the order fails to point out why Brown should be attentive to the subject matter of the suit. Consequently, the order of publication was fatally defective as to the tract in question and the court was without jurisdiction to enter a decree of sale affecting Brown's interest in the subject property. *Harris* v. *Deal,* 189 Va. 675, 685, 54 S.E.2d 161, 165 (1949).

 And former Code § 8-673 (1957 Repl. Vol.), now with modifications § 8.01-113 (1977 Repl. Vol.), relied on by Forrer during oral argument, does not validate the deficient order. That statute provided that if a judicial sale of property is confirmed by the court, the purchaser's title at such sale shall not be disturbed unless the sale be set aside within 12 months from such confirmation. But that enactment does not apply here; it cannot serve to breathe life into a void decree of sale, *Finkel Outdoor Products, Inc.* v. *Bell,* 205 Va. at 932, 140 S.E.2d at 699, or authorize a court by judicial sale to divest one not a party to the suit of his ownership of property. *Mountain Mission School, Inc.* v. *Buchanan Realty Corp.,* 207 Va. 518, 523, 151 S.E.2d 403, 407 (1966).

Accordingly, we hold the trial court reached the correct result in deciding that Brown's deed was not a cloud on Forrer's alleged title and correctly confirmed title in Brown.

 In support of the assignment of cross-error, Brown contends the trial court erred in holding that title to the subject property should be encumbered by a lien in favor of Forrer pursuant to Code § 55-104.[2] We disagree.

---

[2] "§ **55-104. Lien of subsequent purchaser for purchase money paid before notice.** —As against any person claiming under the deed or other writing which shall not have been admitted to record before payment by a subsequent purchaser for valuable consideration of the whole or a part of his purchase money, such subsequent purchaser, notwithstanding such deed or other writing be admitted to record before he becomes a complete purchaser, shall, in equity, have a lien on the property

That section, insofar as pertinent here, affords protection to one who has purchased property for value without notice of any defects in the seller's title. It allows a lien to the extent of the consideration actually paid by such subsequent buyer against one claiming under an unrecorded deed. Forrer qualified as such a buyer, even though he was a judicial-sale purchaser who bought at his own risk. *See Traylor* v. *Atkinson,* 130 Va. 548, 554-55, 108 S.E. 199, 202 (1921).

At the time of the 1966 purchase, Forrer did not have actual notice of the 1953 tax suit or the 1954 sale resulting in delivery of a deed of the property to Brown; and he did not have constructive knowledge of such facts. As the purchaser at a judicial sale, Forrer was bound to look to the county land records and the papers in the suit for information as to the property sold, the title and the boundaries. *Bellenot* v. *Laube,* 104 Va. 842, 846, 52 S.E. 698, 699 (1906). But an examination in 1966 of those sources, including the delinquent land records maintained under Code § 58-984 (1959 Repl. Vol.), would have disclosed only that the property was titled in the name of George W. Cary, whose title the court was purporting to sell, and that the taxes on the property were delinquent for 1955 and subsequent years. Consequently, we hold the trial court correctly granted Forrer a lien in the amount of $625 on Brown's property. And, contrary to Forrer's contention, we also hold the chancellor did not abuse his discretion in awarding interest on the $625 from the date of the 1979 final decree below in this suit, rather than from the time of the purported 1966 purchase.

For all the foregoing reasons, the decree appealed from will be

*Affirmed.*

purchased by him, for so much of his purchase money as he may have paid before notice."