## Richmond

JOHN E. PRUITT, JR., ET AL.

V.

J. VAN FERGUSON, ET AL.

December 3, 1982.

Record No. 801066.

Present: All the Justices.

*Ronald M. Maupin (Gardner & Maupin,* on brief), for appellants.

*William M. Sokol (Whitticar, Sokol, Ledbetter & Haley,* on brief), for appellees.

RUSSELL, J., delivered the opinion of the Court.

In this suit to quiet title, we must determine the effect of a misnomer of the grantee in a recorded deed. The trial court found that the misnomer did not have the effect of disturbing the devolution of title through the apparent chain of successive owners as shown by the land records. We agree, and affirm.

J. Van Ferguson, Marion R. Ferguson, his wife, and others, appellees, brought this suit in 1974 to quiet title against the claims of John E. Pruitt, Sr., and Louise M. Pruitt, his wife, who, with their son, John E. Pruitt, Jr., are appellants here. The Pruitts filed a cross-bill to remove a cloud on title caused by the Fergusons' claim.

The land in question was a part of a tract containing 108 acres owned, prior to 1877, by William J. Harding. By deed dated March 13, 1877, recorded in Deed Book 1 at page 77, Harding and his wife conveyed thirty acres of this tract to their daughters, Henrietta Baker and Reanna Rush, "in consideration of natural love and affection." The original deed evidently ran to Henrietta Baker, George W. Rush and Reanna Rush, his wife. The thirty acres were later divided between the daughters, Henrietta Baker taking the northerly fifteen acres, and Reanna Rush the southerly fifteen acres. The latter parcel, now shown by actual survey to contain 14.33 acres, is the subject of this controversy.

Before the advent of the typewriter, when a deed was executed and delivered, the grantee took it to the appropriate clerk's office where the clerk, or a scrivener working under him, copied the deed in longhand script into the current page of the deed book. In this case, the scrivener wrote the surname of the grantee as "Bush" rather than "Rush" throughout the deed. The scrivener formed the capital letters "B" and "R" quite differently, and evidently made the error as a result of misunderstanding the handwriting on the original deed given to him to be copied. The evidence contains no indication that Harding was in error as to his daughter's married name, and the witnesses knew of no person named Bush in the area. The Rush family was well known. Reanna Rush moved away from the area soon after the conveyance and resided in the District of Columbia thereafter, but the witnesses still knew of her descendents.

The tax records show that the fifteen acre parcel was assessed to Reanna Rush from 1895 through 1955. The assessment card was marked in pencil, at an unknown time, "George W. Bush and Reanna" over the name Rush. The taxes were unpaid for many years. After 1955, the land was assessed to George W. and Reanna Bush, but the taxes continued unpaid.

In 1964, Thompson W. Sterne and wife applied for a tax deed for the fifteen acre parcel assessed to George and Reanna Bush, reciting that the notice required by statute had been published against George W. and Reanna Bush and that the land was to be sold for 1958 delinquent taxes. The clerk issued a tax deed to the Sternes which was recorded in 1964. No contention is made that there was any error, irregularity or fraud in any of the proceedings leading up to this conveyance. The Sternes, in 1966, conveyed

the land to the Fergusons, who thus have a clear chain of title on paper.

A title examiner unacquainted with the facts except as shown on the land records would follow the title from Harding to Bush, to Sterne, to Ferguson. True, the tax deed would require the examiner to ascertain whether the taxes for the year 1958 had been properly assessed against the record owner, Bush, whether proper notice had been given to the "person in whose name the real estate so sold stood" (Code § 58-1053) and whether all of the statutory steps had been followed. An examination of the assessment book and delinquent tax records for 1958, as well as an examination of the land records, would have satisfied this inquiry. He would have found no parties named Rush in the chain of title.

The Pruitts initially based their claim on a chain of title originating in William J. Harding's will, probated in 1898. This will purported to devise a tract of seventy acres to Malvina and Sophia Harding. Malvina's will, probated in 1932, devised all of her real property to Sophia. An Old Age Assistance lien was perfected and foreclosed upon Sophia's property, resulting in a judicial sale to Hunter Simpson in 1955. Simpson and wife conveyed to the Pruitts in 1958.

The trial court, in a written opinion issued in 1978, ruled that William J. Harding, having alienated the subject property in his lifetime, could not pass title by his will. The Pruitts, having also failed to establish adverse possession by the evidence, were found to have no title. The correctness of these rulings is conceded by all parties. The Pruitts, however, during the pendency of the suit, located the heirs of George and Reanna Rush and obtained from them a series of deeds recorded in 1978, purporting to convey to them an aggregate of a seventeen-eighteenths interest in the Rush (Bush) tract. Having abandoned their claim through the will of William Harding, the Pruitts now claim only under these deeds. Their argument is that the tax sale in the Fergusons' chain of title is void because the assessment was made against non-existent persons named Bush and no notice was ever given to the true owners, the heirs of George and Reanna Rush. Title, they contend, remained in the Rush family from the time of the Harding conveyance in 1877 until the Rush heirs conveyed it to them in 1978.

The trial court issued a second written opinion in 1980, finding that the tax sale was valid and that the uncontroverted evidence was that the assessing officials, the clerk, and the purchaser,

Sterne, "all acted in good faith, upon reasonable and honest interpretations of the facts as they appeared, and with full intent to satisfy all requirements of law." A final decree was entered on April 17, 1980, removing the cloud on title arising from the Rush heirs' deed to the Pruitts, and quieting title in the Fergusons.

The dispositive question is whether the assessing officials had the right to rely on the face of the land records in assessing the taxes against George and Reanna Bush for the critical year, 1958. If they acted properly in so doing, it follows that the statutory notice, prerequisite to a valid tax deed, should also have been given to those parties. As we have said, Code § 58-1053, in effect at the time of the tax sale, provided that notice be given to the "person in whose name the real estate so sold stood" at the time of the sale. We interpret this as referring to the names of the owners as shown by the land records. Even if we were to assume that § 58-1053 required that notice were to be given to the person in whose name the land "stood" on the tax assessment records, the result on these facts would be the same, because they, too, showed the land in the name of Bush for 1958.

The Pruitts call our attention to *Gordon* v. *Joyner*, 112 Va. 347, 71 S.E. 652 (1911), where we held a tax deed void because there had been no effort to give the statutory notice, and to *Ashbrook* v. *Bailey*, 116 Va. 10, 81 S.E. 64 (1914), where we held that the purchaser at a tax sale takes only such title as was had by the person assessed. More pertinent, we think, is *Forrer* v. *Brown*, 221 Va. 1098, 277 S.E.2d 483 (1981). There, property was subjected to judicial sale in a chancery suit for delinquent taxes. The owners of record, "and their heirs and all other persons interested in their estates as parties unknown" were brought before the court by order of publication. Actual title, at the time, was vested in one Ned Brown by virtue of an unrecorded deed. He was neither an heir of the recorded owners nor "interested in their estates." We held the order of publication insufficient to bring him before the court, since it contained no words reasonably calculated to notify Brown that his rights were to be affected by the suit. We noted:

> Elementary is the proposition that no person may be deprived of his property without due process of law and one of the essentials of due process is notice. [Citation omitted.]

221 Va. at 1104, 277 S.E.2d at 486. The distinction between that case and this lies in the fact that a prudent title attorney, preparing the order of publication in the tax suit, would have discovered Ned Brown's claim. The same property had been subjected to a judicial sale in another chancery suit four years earlier. Brown had been the successful bidder then, and the final decree had confirmed the sale and recited that a deed had been delivered to him but that it was still unrecorded. It would have been the duty of a prudent title examiner to examine the papers in the earlier suit, which named the record owners as defendants and came within their chain of title. Brown was thus not outside the record chain, as the Rush heirs were in the case at bar.

█ Undoubtedly William Harding intended to convey the land to Reanna Rush and her husband. The original deed may well have contained their names correctly spelled.* Were they, or their heirs, upon due process principles, entitled to notice, in their true names, of the tax sale? To so hold would seriously impair the integrity of our system of recording land titles. It would require a title examiner to search for unrecorded matters as a guard against scrivener's mistakes. He would rely on the record only at his peril.

The facts of this case are unlike those frequently seen where tax authorities erroneously assess land in a name different from that of the owner shown by the land records. We need not, therefore, consider whether the misnomer was sufficiently slight to put the true owners on notice of the assessment, or whether they by their conduct waived any objection thereto, or whether the purchaser at the tax sale is protected by the two-year statute of limitations provided by Code § 58-1064. We think that George and Reanna Rush, in causing their deed to be recorded in 1877, were responsible for the misnomers thus perpetuated in the land records, and that neither they nor any parties claiming under them, in the absence of fraud or oppressive conduct by others, were in a position to complain of or to take advantages of the resulting confusion.

The case of *White* v. *Himmelberger-Harrison Lumber Co.*, 240 Mo. 13, 139 S.W. 553 (1911), is in point. There, a grantee named

---

* The original deed is not in evidence. If it contained the erroneous name, then by the reasoning we adopt in this opinion, the grantee who offered it for recordation is estopped to complain of the erroneous record which resulted. But whether it was erroneous or not, it was not void. A deed to a non-existent person is a valid conveyance to the intended but mis-named grantee, if such a person exists and if the intention of the parties can be ascertained. *City Bank of Portage* v. *Plank*, 141 Wis. 653, 124 N.W. 1000 (1910).

O.H.P. Williams took his handwritten deed to the clerk for recordation. The clerk copied it into the land records, misnaming the grantee as O.*N*.P. Williams. Taxes assessed in the name of record became delinquent. Notice was given to "O.N.P. Williams" and a tax sale was completed in that name. Williams' successor attacked the sale on the ground that the statutory notice had not been given to Williams, but to a non-existent person. The court held, overruling prior authority to the contrary, that the clerk recording a deed acts as the agent of the person offering it for recordation. The purpose of recordation is to protect the grantee's interest, and the recorder acts for him in copying the deed into the record. If this task is improperly done, the consequences must be borne by the party at whose instance it was done, rather than by an innocent purchaser. The original deed does not constitute notice to subsequent purchasers after it has been copied into the record. After it is copied, the record alone imparts such notice. The court further held that the persons claiming under Williams were estopped to dispute the correctness of the record: "Wherever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." *Id.* at 25, 139 S.W. at 556.

We agree with the foregoing reasoning and will accordingly affirm the decree.

*Affirmed.*