## CIRCUIT COURT OF STAFFORD COUNTY

Michael A. Finn

v.

Zoe A. Fancher

January 2, 1996

Case No. (Law) 94000088

BY JUDGE JAMES W. HALEY, JR.

Rule of Court 3:3(c) states in part that no judgment shall be entered where the defendant was served with process more than one year after the commencement of the action "unless the court finds . . . that the plaintiff exercised due diligence to have timely service on him." (In 1994 the Legislature enacted Code § 8.01-275.1, which is basically a codification of Rule of Court 3:3(c).) The primary question here for resolution is whether a law firm acting on behalf of a plaintiff exercised such due diligence. The defendant has filed a motion to dismiss based upon Rule of Court 3:3(c). The plaintiff has moved the court for a default judgment against defendant on the grounds that proper service was effectuated by posting on May 24, 1994, and that no answer or grounds of defense were timely filed. The court conducted an *ore tenus* hearing and the matter was argued and briefed by counsel. The issues raised necessitate a lengthy statement of facts.

On March 30, 1990, an automobile collision occurred in Stafford County between vehicles operated by Michael A. Finn and Zoe A. Fancher. By May 1, 1990, the law firm of Chandler, Franklin and O'Bryan ("CFO") had contacted State Farm Automobile Insurance Company, who they understood insured Fancher, advising they represented Finn.

Almost two years later on January 28, 1992, CFO filed a motion for judgment on behalf of Finn against Fancher in the Circuit Court of Stafford County as Law 57-92. CFO gave Fancher's address as "51 Joshua

Road, Stafford, Virginia 22559 (Stafford County)." The letter to the Clerk transmitting the action did not request service or enclose the costs thereof. Rather, the letter stated: "We will contact you at a later date regarding how and when this document will be served." No service was ever requested. Over two years later on February 1, 1994, CFO's motion to nonsuit Law 57-92 was granted by order that date entered.

On March 11, 1994, CFO filed a second motion for judgment, as Law 94-00088, requesting service at the same Joshua Road address. On March 17, 1994, process was returned by the Sheriff as "not found" with the further notation "moved out." Also on March 11, 1994, CFO mailed a certified copy of the motion for judgment to the Joshua Road address. The original envelope was marked "fwd 1253 Mountain View, Falmouth, Va. 22406" by the postal service, and notice of the letter was sent by the postal service to that address. However, the letter went unclaimed and was returned to CFO by the postal service on March 29, 1994.

Two months later, on May 16, 1994, CFO requested service on Fancher at the Mountain View address, which is also located in Stafford County. This process was returned by the Sheriff as "posted at the usual abode" of Zoe Fancher on May 24, 1994.

No answer or other responsive pleading was filed within the 21-day period mandated by Rule of Court 3:5 and accordingly the defendant was ostensibly in default. However, CFO did not move for a default judgment or complete the mandatory mailing and notice requirements of Rule of Court 3:3 and Code § 8.01-296 to obtain a default judgment.

(Rule of Court 3:3 reads in part: "When service of process is effected by posting no judgment by default shall be entered until the requirements of Code § 8.01-296(2)(b) have been satisfied." Code § 8.01-296(2)(b) requires that after posted service judgment cannot be entered unless "not less than ten days before judgment by default . . . the party . . . mails to the party served a copy of such process and thereafter files in the office of the clerk of court a certificate of such mailing.")

Four months later, on October 14, 1994, CFO employed A & F Investigations to do a real estate, credit, and banking check on Fancher. On October 21, 1994, A & F replied, giving balances on banking accounts, and records of the General District Court of Stafford County. These court records showed that Fancher had filed a warrant in debt on July 18, 1994, giving her address on Mountain View Road. A & F also supplied, in addition to the Joshua Road address, an address at the Belleau Wood Apartments in Triangle, Virginia.

CFO did nothing further until January 12, 1995, when they employed Danny's Courier Service to attempt service at the Belleau Road address. Danny (Sauver) went to both the Joshua and Mountain View addresses and determined Fancher did not live there. He then went on January 20, 1995, to the Belleau Wood address, which were garden style apartments with mailboxes in the lobby. One of these showed the name "Fancher" on Apartment F-102. CFO had requested he effect personal service only, but that day Danny "posted" the service by placing the pleading on a door knob to apartment F-102. CFO thereupon informed Danny they wanted personal service and Danny returned on January 21 and 23, finding nobody home. CFO then told him to cease his efforts. Danny acknowledged he did not check with any neighbors at either the Joshua, Mountain View, or Belleau Wood addresses to see if Fancher actually lived there, nor checked at the post office for forwarding addresses. Apartment F-102 on Belleau Wood was the residence of Fancher's son, Maurice Fancher, III.

CFO prepared a Proof of Service Affidavit for Danny to sign as to his posted service. The jurat prepared by CFO on this affidavit was incorrect in that it recited that "service [was] accepted before me, a Notary Public in and for the Commonwealth of Virginia this 22nd day of February 1995" and was signed by a CFO paralegal. CFO has conceded this return is faulty.

In any event, CFO again did not move for a default judgment on this second "posted" service or follow the mandatory mailing and notice requirements of Rule of Court 3:3 or Code § 8.01-296 to obtain a default judgment.

On March 24, 1995, more than one year after suit was initiated, CFO wrote to DMV asking for any new addresses for Fancher, giving as her address the Belleau Wood address. The March 29, 1995, response gave the Joshua Road address.

On May 19, 1995, again more than one year after suit was initiated, CFO was replaced as counsel for Finn. That new and present counsel then employed Dominion Bureau of Investigation, Inc., to locate Fancher in June 1995, again more than one year past the time the second motion for judgment had been filed. By written report dated August 2, 1995, (Plaintiff's Exhibit 15), Dominion documented that in June 1995 they had gone to the Post Office and learned that Fancher had given a change of address form from Joshua Road to Mountain View Road on November 19, 1993, and on December 20, 1994, from Mountain View to 365 Poplar Road. On June 12, 1995, James A. Baker of Dominion personally served the motion

for judgment on Fancher at her residence at 365 Poplar Road in Stafford County. Fancher promptly turned over the motion for judgment to her insurance carrier, State Farm.

It should be noted that no attorney from CFO testified at the *ore tenus* hearing concerning their attempts to obtain service or locate Fancher. Moreover, except for the transmittal letter to the clerk filing the original subsequently nonsuited action, no attorney from CFO signed any correspondence dealing with efforts to effect service on Fancher or locate her or with the Clerk's Office of the Circuit Court. All this was done by Kimberly S. Tuyp (now Kimberly Felter), a paralegal. It is clear that CFO in this case turned over the responsibility of effectuating service or locating Fancher to their paralegals. Indeed, as is shown on Plaintiff's Exhibit 9, invoice number 27119 from Danny's Courier Service, the decision to rely on the January 20, 1995, posted service at the Belleau Road address, rather than continue attempts for personal service, was made, as Danny noted on his bill, "after talking with Kim concerning serving Ms. Fancher in person."

At the *ore tenus* hearing, Mrs. Felter further testified that she had begun working for CFO in July 1994 and that from her records of the Fancher file three different attorneys had handled the matter. She acknowledged that no efforts were made by the attorneys, or by her at their direction, to find telephone numbers for Fancher, or anybody named Fancher, to talk directly with the Stafford Sheriff's office, to attempt to find relatives of Fancher, to actually go to any of the addresses and inquire as to Fancher's whereabouts from neighbors, to inquire at a country store across the road from the Mountain View residence, to check for church affiliations, to follow up on posted service on Belleau Road, or to go to the post office to inquire as to forwarding addresses.

Mrs. Felter testified that it was her understanding that CFO did not proceed to attempt to obtain a default judgment on the May 24, 1994, posted service on Mountain View Road because CFO had been in negotiations with State Farm since the accident of March 30, 1990, because State Farm had not received any suit papers from Fancher and also did not know where Fancher was, because they did not think the Mountain View address was good, and because CFO did not not want to make State Farm angry by seeking a default judgment.

Zoe A. Fancher testified at the *ore tenus* hearing that she lived at the Joshua Road address until November 1993, when she sold the property, after a divorce. At that time and for months thereafter she suffered serious

depression and alcohol related physical problems. She was in and out of various treatment centers, intermittingly living with her son at the Belleau Road address, or at a friend's named Connie, where she was keeping her dog.

She had given the Mountain View address to the Post Office as a mailing address to periodically pick up mail from the Social Security Administration, where she was pursuing a disability claim, and the Stafford County Department of Social Services, but she did not live there until May 26, 1994, when she moved in with her daughter at that address. She hoped to obtain Social Security, she stated, because she did not want to be a burden on her children.

Prior to May 26, 1994, all her furniture and most of her clothing had been in storage in a van in Dumfries, Virginia. She lived at the Mountain View address from May 26, 1994, until she moved with her daughter to the Poplar Road address in November 1994 where she has remained. As noted above, Fancher advised the Post Office of her change of address in November 1994, a fact that Dominion Investigations had promptly discovered. Fancher testified that she had no knowledge of the action against her until she had a phone conversation with someone from State Farm in April or May 1995 and when she was served on June 12, 1995, she promptly turned the pleadings over to her insurance carrier. Fancher further testified that her mother-in-law, named Fancher, and her son, Maurice Fancher, III, were always listed in the local phone directory.

Mrs. Fancher's daughter, Ms. Jennifer Bryant, corroborated her mother's statements. Ms. Bryant, a unit secretary at the Mary Washington Hospital Emergency Room in Fredericksburg, testified that her mother had been through a bitter divorce and suffered from serious depression and alcohol related problems. Her mother did use the Mountain View address as a mailing address and would sporadically pick up mail there. She would spend one night there every one or two months. For months at a time, however, she simply did not know where her mother was.

On May 26, 1994, Ms. Bryant received a phone call from her mother's friend, advising that her mother was suicidal and had a serious relapse. She immediately picked up her mother and took her to the Mary Washington Hospital Emergency Room. After treatment there, she brought her mother home with her and enrolled her in rehabilitation on an out-patient basis. Fancher lived with her daughter at the Mountain View address thereafter until November when they moved to Poplar Road. The Moun-

tain View residence was rented by Ms. Bryant (and her husband) from a man named Tyson, who also owned a country store across the road.

Ms. Bryant further testified she knew nothing about the motion for judgment against her mother and had seen no mail for her mother dealing with a claim against her for an automobile accident.

There is no evidence that Fancher attempted in any way to evade service of process.

Gary Harding, a representative of State Farm, had inherited the Finn claim file against Fancher. The file reflected a postcard had been sent to Fancher and she had called in 1994 and was unaware of any suit against her. In late March or early April 1995, State Farm tried to contact Fancher and did so by phone on April 7, 1995. The transcript of the *ore tenus* hearing contains the following:

> Q. Mr. Harding, you didn't have any trouble finding her then — you are telling me you were able to find her within a week from the time that you tried to find her in March of this year?
>
> A. Yes. That's true. It wasn't really that hard.

(Tr. 148.)

The matter comes before the court in the procedural posture of a motion for default judgment against Fancher and Fancher's motion to dismiss based upon lack of due diligence in effectuating service.

The motion for default judgment is predicated upon the validity of service on Fancher on May 24, 1994, at 1253 Mountain View Road, which was returned "posted on the front door of her usual place of abode." It is ironic to note that only in support of the motion for default judgment does CFO for the first time rely upon the purported validity of service on May 24, 1994. Instead, CFO sought other methods of service and did not complete the mailing and notice requirements of Rule of Court 3:3 and Code § 8.01-296 to earlier obtain a default judgment.

The return of process by the Sheriff is no longer a verity. Rather, "the return shall be prima facie evidence of the facts therein stated . . . ." Code § 8.01-326. Accordingly, the facts in the return can be rebutted by competent evidence.

Other than the fact Fancher used the Mountain View as a mailing address, there is no evidence that that location was her "usual place of abode" on May 24, 1994. The uncontradicted evidence is to the contrary, that is, that Fancher did not occupy, and had never occupied, the Mountain

View location until May 26, 1994, and that she had none of her personal possessions there until subsequent to that date.

Statutes permitting constructive service in lieu of personal service are to be strictly construed. *Forrer v. Brown*, 221 Va. 1098, 1105, 277 S.E.2d 483, 486 (1981); see also, *Crockett v. Etter*, 105 Va. 679, 54 S.E. 864 (1906).

In *Washburn v. Angle Hardware Co.*, 144 Va. 508, 512-513, 132 S.E. 310, 313 (1926), the court quoted with approval and adopted the language of a Commissioner in Chancery appointed in the case:

> The statute[1] . . . is mandatory in its command that the Sheriff must make substituted service at the "usual place of abode," the then present, usual place of abode, the place where the defendant resided at the time of the service.

The court concluded that:

> Last home, or residence, or place of abode, are not synonymous with usual place of abode . . . and . . . in making substituted service . . . the copy of notice must be left at the defendant's usual place of abode and not elsewhere. *Washburn, supra*, 144 Va. at 515, 132 S.E. at 314.

In accordance with the above principle, the court holds the attempted service on Fancher by posting on May 24, 1994, was invalid. Moreover, as noted above, CFO never complied with the mailing and notice provisions of Rule of Court 3:3 and Code § 8.01-296(2)(b), a statutory condition precedent to completing service and obtaining a default judgment.

The second motion for judgment against Fancher was filed on March 11, 1994, and Rule of Court 3:3 requires that service be effectuated by March 12, 1995. As noted above, and in accordance with the court's ruling, proper service was only obtained on June 12, 1995. Thus we turn to the question as to whether CFO used due diligence to attempt to obtain service.

"The determination whether due diligence has been used is a factual question to be decided according to the circumstances of each case. *Mackie v. Davis*, 2 Va. (2 Wash.) 219, 226, 228 (1796)." *Dennis v. Jones*, 240 Va. 12, 19, 393 S.E.2d 390, 393 (1990). See also, *Mears v. Accomac*

---

[1] Then § 3207, Code of 1919, which is now Code § 8.01-296(2)(b).

*Banking Co.*, 160 Va. 311, 168 S.E. 740 (1933); *Liberty Mutual v. Williams International Industry, Inc.*, 780 F. Supp. 359 (E.D. Va. 1991).

The noun "diligence" means "devoted and painstaking application to accomplish an undertaking." Webster's Third New International Dictionary 633 (1981); *Dennis, supra*, 240 Va. at 19, 393 S.E.2d at 393.

In *STB Marketing Corp. v. Zolfaghari*, 240 Va. 140, 144, 393 S.E.2d 394, 397 (1990), dealing with due diligence in discovering fraud, the court stated:

> The language "by the exercise of due diligence reasonably should have been discovered . . ." means "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and exercised by, a reasonable and prudent man under the particular circumstances, not measured by any absolute standard, but depending on the relative facts of the special case." Black's Law Dictionary 411 (rev. 5th ed. 1979).

In *Saunders v. Wire Rope Corp.*, 777 F. Supp. 1281, 1283 (E.D. Va. 1991), the federal court commented that "the general thrust of Rule 3:3(c) appears to contemplate and encourage prompt, bona fide efforts to secure service on defendants once the action has been filed."

Finally, though again dealing with the discovery of fraud, the Court in *Hughes v. Foley*, 203 Va. 904, 907, 128 S.E.2d 261, 263 (1962), noted that "the burden is on the plaintiff to prove that he acted with due diligence . . . ."

In *Dennis, supra,* the question of due diligence arose in an action to set aside a default judgment in an automobile accident case in which service had ostensibly been obtained through the Commissioner of Motor Vehicles after execution of an affidavit pursuant to Code § 8.01-316(1)(b) that "diligence has been used without effect to ascertain the location of the party to be served."

In September 1987, plaintiff filed a suit against defendant for damages resulting from an automobile accident on January 16, 1986. As in the instant case, counsel did not request the motion for judgment be served. On the date of the accident, defendant was a college student with an address on Park Avenue in Richmond. In March 1986, defendant moved to an apartment on Stafford Avenue in Richmond. In November 1987, defendant moved to Deepwood Circle in suburban Richmond. As in the instant case, in December 1987, defendant notified the Post Office of her move from Stafford Avenue to Deepwood Circle. In addition, the defendant had

advised DMV of her new address and had utilities turned on in her new address.

In February 1988, plaintiff asked that process be served at the Stafford Avenue address. The return was "not found," but the Sheriff noted that mail had accumulated and defendant's name was not on the mailbox listings. On April 6, 1988, plaintiff's attorney executed his affidavit of due diligence.

The Supreme Court noted the various ways by which plaintiff could have determined the defendant's new address, specifically noting that the defendant's "mailing address had been changed officially by the U.S. Postal Service . . . ." *Dennis, supra,* 240 Va. at 19, 393 S.E.2d at 393. The court held that these efforts to locate the defendant did not constitute due diligence as a matter of law and reversed the trial court's failure to set aside the default judgment.

In the instant case, plaintiff had contacted CFO within sixty days of the date of the 1990 accident. No process was even requested for the first motion for judgment which was filed in 1992 and nonsuited in 1994.

The second motion for judgment was filed on March 11, 1994, requesting service at an address on Joshua Road that CFO knew was over four years old. That was returned "not found," and CFO also received back its mailing giving a new address on Mountain View Road. However, two more months passed before service was attempted at that address, and even though that service was ostensibly good by posting, CFO chose not to rely upon it by following up with the notice and mailing provisions to obtain a default judgment.

Four months later, in October 1994, CFO hired A & F Investigations who provided CFO with a record of the General District Court of Stafford County showing that Fancher had lived on Mountain View Road on July 18, 1994, when she filed her warrant in debt. A & F also provided a Belleau Wood address.

However, no action was taken for another four months until service was attempted at Belleau Wood there by Danny's Courier Service in January 1995. In June 1995, new counsel hired Dominion Bureau of Investigation. That month they went to the Post Office and were given defendant's address at 365 Poplar Road. In November 1994, Fancher had advised the Postal Service of her address change from Mountain View Road to Poplar Road. That address was equally available to CFO from December 1994 onwards.

From the foregoing, it appears that for ten of the twelve months following the filing of the motion for judgment on March 11, 1994, nothing was done to locate Fancher or effectuate service.

This court finds as a fact that the actions of CFO are not demonstrative of "devoted and painstaking application to accomplish" service upon Fancher within the time mandated period of one year and do not constitute due diligence. As a consequence, the motion to dismiss is granted and that dismissal is with prejudice in accordance with *Gilbreath v. Brewster*, 250 Va. 436 (1995).