COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Powell and Senior Judge Clements


VICTOR PEREZ-VELASQUEZ

                                                    MEMORANDUM OPINION[*]
v.        Record No. 0360-09-4                            PER CURIAM
                                                          JUNE 30, 2009
CULPEPER COUNTY DEPARTMENT
  OF SOCIAL SERVICES


                    FROM THE CIRCUIT COURT OF CULPEPER COUNTY
                               John G. Berry, Judge

              (Christian A. Brashear, Guardian *ad litem* for appellant, on brief), for
              appellant.  Appellant submitting on brief.

              (Robert F. Beard, on brief), for appellee.  Appellee submitting on
              brief.

              (J. Michael Sharman; Commonwealth Law Offices, P.C., on brief),
              Guardian *ad litem* for the minor children.  Guardian *ad litem*
              submitting on brief.


        Victor Perez-Velasquez (father) appeals the trial court's ruling to terminate his parental

rights to his children.  Father argues that the trial court erred in (1) terminating his parental rights

pursuant to Code § 16.1-283(C); (2) determining that the Culpeper County Department of Social

Services (CDSS) included father in the development of the foster care plan; (3) holding that CDSS

gave father sufficient notice; (4) finding that father failed to maintain contact with the children; and

(5) determining father did not substantially plan for the future of the children.  Upon reviewing the

record and briefs of the parties, we affirm the decision of the trial court.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Father and Miriam Diaz (mother) were illegal immigrants from Guatemala. They had three children, who were born in the United States, and consequently, were citizens of the United States and Guatemala. On June 20, 2006, mother left the three young children unsupervised at home while she went on a job interview. Father was incarcerated at the time. When a social worker came to the house and found the children alone, CDSS removed the children from the home. CDSS placed the children in foster care and worked with mother. Services were limited because mother was an illegal immigrant. No services were offered to father. Father appeared at one foster care hearing prior to being deported to Guatemala on or about October 2007. On April 2, 2008, the Culpeper County Juvenile and Domestic Relations District Court (JDR court) terminated the parental rights of both parents. Both parents appealed.

On September 6, 2008, the parties presented evidence to the trial court. Father was not present, since he had been deported, but his guardian *ad litem* (GAL) was present. The parties stipulated that father had not been involved in the planning of any of the foster care plans since he was incarcerated and deported. The parties agreed that because of the circumstances of father's conviction, he can never legally return to the United States. The parties further stipulated that father had not been provided any services. Lastly, the parties stipulated that an order of publication for the termination of father's parental rights appeared in the Culpeper Star-Exponent when father was either in the custody of federal authorities or had already been deported to Guatemala. On January 21, 2009, the trial court terminated father's parental rights. Father timely noted his appeal.

- 2 -

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

Questions Presented 1, 4, and 5 - Termination of Parental Rights

Father argues that the trial court erred in terminating his parental rights under both Code §§ 16.1-283(C)(1)[1] and 16.1-283(C)(2).[2]

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

---

[1] A person's parental rights may be terminated if:

> [t]he parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

Code § 16.1-283(C)(1).

[2] A person's parental rights may be terminated if:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

Father admits he had no contact with the children while they were in foster care. He argues that there was no evidence that he willfully failed to maintain contact with his children. He contends he did not know where the children were. He also argues that it would have been difficult to communicate with the children because the children primarily spoke English, whereas he spoke Mam and Spanish.

However, father's own actions led to this situation. He was convicted of malicious wounding, and his incarceration and deportation affected his ability to contact his children and participate in the foster care proceedings. Father was incarcerated when the children were placed in foster care, and after he served his sentence, he was deported to Guatemala and not allowed to return to the United States. As the trial court explained:

> His imprisonment as a result of the serious crime and his subsequent deportation eliminated any chance that he could maintain contact with the children and be involved in the foster care plan during the time period after the children's placement in foster care, or that he could participate in remedying, within a reasonable time, the conditions resulting in the placement and continuation of the children in foster care.

Father further argues that CDSS should have offered him services, even though he was incarcerated and later deported.

> [W]e find no merit in [father's] contention on appeal that Code § 16.1-283(C)(2) required the Department to offer him services during his incarceration. It would be patently unreasonable to require the Department, under such circumstances, to continue to offer services. . . . Thus as long as he was incarcerated, the Department would have had no avenue available to offer [father] services aimed at assisting him in regaining custody of the child.

Harrison v. Tazewell County Dep't of Soc. Servs., 42 Va. App. 149, 163-64, 590 S.E.2d 575, 583 (2004).

> While long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's

- 4 -

> finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

Contrary to father's assertions in this appeal, he did offer his plan for the future of the children. In the JDR court, father explained that even though he was going to be deported, his plan was to return to the United States and take the children, but his return would be illegal. This plan was not viable, and it was not in the best interests of the children.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Considering father's circumstances, we cannot say that the trial court erred in determining that it was in the best interests of the children to terminate father's parental rights.

### Question Presented 2 - Foster Care Plan

Father argues that the trial court erred in determining that CDSS involved father in the foster care plan.

Code § 63.2-906 requires a local social services agency to involve the children's parent in the development of the foster care plan, unless a parent's parental rights has been terminated or, after diligent efforts, the parent cannot be located. See also Code § 16.1-281.

The trial court held that CDSS took sufficient steps to involve the father in the planning process. The trial court explained, "The father's failure, or inability, from a practical standpoint to be involved in the preparation and implementation of the foster care plan arose from his own actions and not any lack of action by the Department of Social Services."

Father received two letters from CDSS. The first letter notified him that the children were in the custody of CDSS. The second letter was sent when the goal was changed to adoption, but a

copy of the plan was not included with the letter. Father also was present at one JDR court hearing and was represented by his GAL at all of the foster care hearings. Statements from his GAL about father's status were included in the foster care plans. The trial court did not err, since father's participation in the development of the foster care plans was limited by his incarceration and deportation.

Question Presented 3 - Notice

Father argues that CDSS failed to give him adequate notice of the termination of his parental rights. CDSS issued an order of publication in a local newspaper. At the time of the publication, father was either in the custody of the federal authorities or had been deported to Guatemala, and his address was unknown. Father contends that CDSS should not have published the order of publication in a local newspaper because father was outside of the circulation area. Since the parties did not have a current address for father, an order of publication was the only method of providing notice to father of the termination of parental rights hearing. The legislature has defined how a person is served by order of publication. Code § 8.01-317. The order of publication shall run "in such newspaper as the court may prescribe, or, if none be so prescribed, as the clerk may direct, and shall be posted at the front door of the courthouse wherein the court is held." Id.

> The order of publication is in lieu of process, and its purpose is to bring the party into court, to apprise him of the nature of the proceedings against him, and to notify him that his rights will be affected by the litigation. Peatross v. Gray, 181 Va. 847, 858, 27 S.E.2d 203, 209 (1943). Because the notice is constructive only, the order of publication and the statute authorizing it both must be strictly construed. Steinman v. Jessee, 108 Va. 567, 572, 62 S.E. 275, 277 (1908).

Forrer v. Brown, 221 Va. 1098, 1105, 277 S.E.2d 483, 486 (1981).

Here, the trial court found that CDSS "made adequate efforts to give the father notice of the proceedings in this case consistent with the statutes and notions of due process." Credible evidence supports this finding.

- 6 -

Father also argues that the notice was insufficient because the order of publication was written in English. Father speaks Spanish and Mam, but not English. Father's due process rights were not violated when the order of publication was published in English because father would have been put on notice to seek a translation of the document. See Maso v. State Taxation and Revenue Dep't, 96 P.3d 286, 291 (N.M. 2004) ("an English-language notice puts the non-English speaker on inquiry notice to have the notice translated and, for that reason, satisfies due process"); Alfonso v. Board of Review, 444 A.2d 1075, 1077 (N.J. 1982) ("in an English-speaking country, requirements of 'reasonable notice' are satisfied when the notice is given in English"); Guerro v. Carleson, 512 P.2d 833, 836 (Cal. 1973) ("the government may reasonably assume that the non-English speaking individual will act promptly to obtain such assistance when he receives the notice in question").

Therefore, father had adequate notice of the proceeding.

CONCLUSION

For the foregoing reasons, we hold that the evidence was sufficient to terminate father's parental rights, and we affirm the trial court's rulings.

Affirmed.