Syllabus.

## Staunton.

STEINMAN V. JESSEE AND OTHERS.

September 10, 1908.

Absent, Keith, P.

1. PROCESS—*Publication—Construction of Statute and Order.*—Notice by publication is constructive only, and, in order to bind a party thus proceeded against, the order of publication, as well as the statute authorizing it on prescribed conditions, must be strictly construed.

2. PROCESS—*Publication—Mistake in Name—Case in Judgment.*—While the doctrine of *idem sonans* may be invoked to cure immaterial variations in the spelling of a name in an order of publication, the combination of letters and syllables must produce the same sound as the true name. A defendant whose name is "Steinman" is not properly proceeded against by publication where the name is spelled "Stainmau" in the caption of the order which is the notice, and "Stinman" in the part of the publication which is regarded as the warning, although the initials of his Christian name are correctly given in each place. This is not a case of *idem sonans.*

3. ESTOPPEL—*Purchaser With Notice of Prior Equities—Acquisition of Legal Title—Case in Judgment—Laches.*—If A, with full knowledge of B's prior equitable rights to the minerals underlying a tract of land, purchases the surface, subject to such equitable rights, agreeing to pay therefor what his vendor owed on the land, and subsequently acquires title to the whole land under a judicial sale made to enforce the collection of what he had promised to pay, he becomes a trustee holding the legal title to the underlying minerals for the benefit of B, and will not be heard to set up against him the defense of laches, unless B has slept upon his rights for an unreasonable time after knowledge that A was claiming title to both the surface of the land and the underlying minerals.

4. LACHES—*When a Defense—Case in Judgment.*—No fixed rule has been, or can be laid down as to when a court of equity will or will not enforce a right, where there has been laches in asserting it, but each case must be decided upon its own peculiar facts. In the case

in judgment, the facts are few and simple and for the most part appear of record. The principal, if not only, actors are alive and capable of testifying, the records are all still in existence and the adverse party has not changed his position nor been prejudiced by the delay. Under these circumstances, laches is not imputable to the complainant.

Appeal from a decree of the Circuit Court of Wise county. Decree for defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

*Irvine & Morison, Geo. A. Smith* and *A. C. Anderson,* for the appellant.

*Ayers & Fulton,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

This appeal brings under review a decree of the Circuit Court of Wise county, sustaining a demurrer to and dismissing a bill, as amended, filed by appellant against appellees, the object of which was to quiet the title claimed by appellant to the minerals in, under and upon a certain tract of land, and to extract from appellee, M. V. Jessee, the legal title to said minerals and the mining interests therein.

The facts alleged in the bill are substantially as follows: By deed dated December 21, 1874, A. D., Parsons sold and conveyed to appellant and one J. D. Price the minerals and certain mining rights in, under and upon two tracts of land situated in the county of Wise, Virginia, containing respectively, 206 and 30 acres. A few days thereafter Price sold and conveyed to appellant his interest in said minerals, and appellant has claimed to own the same ever since, paying the annual taxes thereon. Parsons held only the equitable title to these parcels of land, and this was in the form of a title bond from one Dale Carter, the holder of the legal title, dated March 31,

1873. Carter died without having conveyed the land, and suit was brought in the Circuit Court of Wise county by his administrator against Parsons and others for the purpose of specifically performing the said contract of sale, some of the heirs at law of Carter being *non sui juris.* In the meantime, and after the sale of the minerals to appellant, Parsons had sold the surface of said lands, but not the minerals, to other parties in separate parcels, and these sub-purchasers agreed that as a part of the consideration for their respective purchases they would pay off and discharge in full their proportional part of the balance due from their grantor to Dale Carter's estate. Thereafter, a part of the surface of said lands was bought by Martin V. Jessee (appellee here), and as a part of the consideration for this sale Jessee undertook and agreed to pay to Dale Carter's estate the same proportion of the original puchase money which his vendor had agreed to pay, and which agreement on the part of Jessee bound him to pay, not only the principal sum, but interest and costs of the proceeding necessary to enforce the original contract.

The suit of *Carter's Admr.* v. *A. D. Parsons, et al.,* proceeded to the point where E. M. Fulton, as a special commissioner, was directed to sell the lands, according to the several subdivisions, unless the remainder of the purchase money due Carter's estate was paid, and all this remainder was paid by the respective parties, except the costs; whereupon, Fulton, as commissioner, sold the respective interests of these parties for the purpose of paying these costs. At this sale Jessee (appellee) himself became the purchaser of his part of the land for $17.48, this part being 105 acres of the surface, and Fulton executed to Jessee a deed for the same, but in this deed there was no reservation of the minerals, the deed in form being a deed for the fee in the property; but the real transaction, as claimed in the bill here, was a sale of the surface only, or rather, it is claimed that the effect is the same as if there had been no such sale of the property, as Jessee and the other parties purchasing

their respective interests in the surface of the land, merely paid the sums which they had agreed to pay.

Appellant was made a party to the bill in the said suit of *Carter's Admr.* v. *A. D. Parsons, et als.,* but he was proceeded against only by order of publication, the notice of which as published giving his name as "A. J. Stainmau" and nowhere in the publication was his name correctly given. Appellant was at that time, and has at all times since his purchase from Parsons, in 1874, been a resident of the State of Pennsylvania.

Appellee, Jessee, having obtained his commissioner's deed in the cause of *Carter's Admr.* v. *Parsons, et al.,* took possession of the surface of the 105 acre parcel of land, and has owned, occupied and used it from that time to the bringing of this suit; but, according to the facts stated in the bill, he set up no claim whatever to the underlying minerals or the right to mine the same until a short while before this suit was brought. It is further alleged that appellant did not know that appellee, Jessee, was claiming said minerals until within one year before the institution of this suit; that no actual possession has ever been had of these minerals, as they are now and have at all times been remote from railroad development, so that it has not been practicable to mine them; that as soon as appellant had purchased this tract of minerals he caused the same to be placed on the land books of Wise county for assessment for taxes, and they have at all times since been regularly assessed to him and he has paid the taxes thereon; that he, appellant, has made open and notorious claim to said minerals and the right to mine the same during all these years, and received no information or notice of any kind that his rights thereto were disputed, and had no actual knowledge of the existence of the cause of *Carter's Admr.* v. *Parsons, et. al.,* instituted in 1883, until a short time prior to the institution of this suit; that appellant occasionally came to Virginia during that period, looking over his lands, of which he had a large quantity in the counties of Wise and Dickenson, including the tract in controversy

here, and seeing that there was no actual adverse possession thereof, and not learning of any adverse claims thereto, he relied, as he was advised he had a right to rely, upon the covenant of general warranty in his deed from Parsons for the perfection of his title. Both Parsons and appellee, Jessee, it is alleged, lived and still live in the immediate neighborhood of this tract of minerals; and it is charged that the claim set up by Jessee to them is, in view of the facts known to him, fradulent, etc.

The first ground of demurrer, viz., that the bill does not account for the delay in bringing this suit, and sets up no excuse therefor, is without merit. Facts are set out in the bill to show that appellant had no reason for bringing this suit until a short while before it was brought, and upon these facts (admitted to be true by the demurrer) it was not incumbent on him to set up any further excuse for not sooner taking action to protect his rights.

As a second ground of demurrer it is said, substantially as in the first, that the bill on its face shows that all of appellant's pretended rights are barred by laches and the statute of limitations. This ground of demurrer, mainly relied on by appellee, Jessee, proceeds upon the theory of the third ground stated, viz., "that the bill shows on its face that complainant (appellant) was a party defendant to the suit of *Carter's Admr.* v. *A. D. Parsons, et als.*, and was regularly proceeded against as such. His only remedy, therefore, was by petition in that suit within the time prescribed by the statute, which time having elapsed complainant is forever precluded by the said proceedings." In other words, more than twenty-one years having elapsed since the deed from Fulton, commissioner, to appellee, Jessee, in 1885, at which time appellant's right of action accrued, he is now barred from bringing this suit by reason of his long delay.

In no view of the case made by the bill can this contention be sustained. If appellant were in fact a party to the suit of

*Carter's Admr.* v. *Parsons, et al.,* the decrees in that case, of course bind him, and the grounds of demurrer relied on by appellee, Jessee, would be attended with much force; but in order to bind appellant by those decrees the proceeding against him by publication must have been strictly in compliance with the statute authorizing notice to a party to a pending suit by publication. Such a notice is constructive only, and the order of publication, as well as the statute authorizing it on prescribed conditions, is to be strictly construed; otherwise a party's rights cannot be taken from him without a day in court.

Unquestionably the doctrine of *idem sonans* may be invoked to cure immaterial variations in the spelling of a name, but the authorities agree that the combination of letters and syllables must produce the same sound as the true name. To apply the doctrine to this case, where in the caption to the order of publication the name is spelled *"Stainmau"* which is the notice, while in that part of the publication regarded as the warning, the name is spelled *"Stinman,"* and hold that appellant should have understood that *"Steinman"* was meant, would be not only to carry the doctrine beyond any authority cited, or that we have been able to find, but beyond sound reasoning. That the initials of the Christian name of the party for whom the notice is intended are correctly printed, is of no importance, except as a matter of secondary consideration, since the attention of one reading the notice, perchance it might be would not be attracted by the initials of the Christian name, but by the surname, far less commonly in use in the great majority of cases than the initials of a Christian name.

If, however, appellant could be considered as properly a party to the cause of *Carter's Admr.* v. *Parsons, et al.,* and therefore bound by the decrees therein, still the question would remain, whether or not the effect of that suit merely transferred to appellee, Jessee, the title, legal and equitable, to the minerals which are the subject of the controversy we are dealing with. Conceding that this was the effect to be given the

proceedings in that cause, could appellee, Jessee, retain the equitable title to these minerals, when he had never acquired the same or paid any consideration therefor? He, according to the allegations of the bill, purchased the land subject to appellant's prior equitable rights, with full knowledge of these rights, and agreed to pay off and discharge the debts due Carter's estate, the effect of which agreement, when carried out by him, would have saved appellant and his predecessors in title harmless. What was really done, if the allegations of the bill of appellant be true, was, that appellee, Jessee, paid Fulton, commissioner, no more nor less than he was obligated to pay in accordance with his contract with Parsons; therefore the sale of the land to him by the court's commissioner was a mere formality and a useless one, and in fact, so far as appellee, Jessee, is concerned, it was to all intents and purposes a fraud upon the rights of appellant and his predecessors in title. Under these circumstances, while the conveyance carried the legal title to Jessee, he thereby became a trustee, holding this legal title for the benefit of appellant, when his bill was filed in this cause, and could not be heard to set up against appellant the defense of laches, unless appellant had slept upon his rights for an unreasonable time after knowledge that Jessee was claiming title to both the surface of the land and its underlying minerals.

The allegations of the bill show, as stated already, that appellant had no knowledge of the facts upon which appellee, Jessee, rests his claim of right to these minerals until within about a year before the bill was filed; and taking as true, upon demurrer, all the facts alleged and well pleaded, as is the established rule, there has been neither unreasonable delay in bringing this suit nor change in the status of the parties which would make it inequitable to grant the relief prayed. These allegations plainly excuse appellant for not having sooner brought his suit to protect his rights in and to the minerals in question, for it is made to appear, not only that he did not know of appellee, Jessee, setting up any claim to them, but that prior to one year next

preceding the institution of his suit, he (appellant) had no knowledge of any fact which was sufficient to put him on inquiry as to whether appellee, Jessee, or any one else was denying his right thereto. Under these circumstances laches is not imputable to appellant. 18 Am. & Eng. Enc. L., 99-101, 113-114; *Eubank* v. *Barnes,* 93 Va. 153, 24 S. E. 908; *Bell* v. *Wood,* 94 Va. 677, 27 S. E. 504; *Jameson* v. *Rixey,* 94 Va. 342, 26 S. E. 861; *Gish* v. *Jamison,* 96 Va. 312, 31 S. E. 521.

A case directly in point is *Moorman* v. *Arthur,* 90 Va. 455, 18 S. E. 869. See also the authorities there cited.

No fixed rule has been, or can be, laid down as to when a court of equity will or will not enforce a right, where there has been laches in asserting the right, but the authorities agree that the question must be determined upon the facts of each particular case.

In the case at bar, the bill shows that the transactions involved are few and simple, and are almost entirely matters of record. The principal, if not the only, actors in the matter were appellant and appellees, Jessee and A. D. Parsons, all of whom are living and capable of testifying, and all the records are in existence for use in ascertaining the real facts touching the controversy.

For the foregoing reasons, we are of opinion that the circuit court erred in sustaining the demurrer to the bill, and, therefore, the decree appealed from will be reversed and annulled, and the cause remanded to be further proceeded in to a hearing upon its merits.

*Reversed.*