172 N.J. Super. 343 (1979)
411 A.2d 1183
LUTHERAN SOCIAL SERVICES OF NEW JERSEY, PLAINTIFF,
v.
JOHN DOE, AN UNNAMED AND UNKNOWN INDIVIDUAL, NATURAL FATHER OF J., DEFENDANT, AND LUTHERAN SOCIAL SERVICES OF NEW JERSEY, PLAINTIFF,
v.
JOHN DOE, AN UNNAMED AND UNKNOWN INDIVIDUAL, NATURAL FATHER OF B., DEFENDANT.
Superior Court of New Jersey, Law Division Probate Part, Camden County.
Decided December 12, 1979.
*344 Robert T. Egan for plaintiff (Archer, Greiner & Read, attorneys).
TALBOTT, J.S.C.
Lutheran Social Services, an agency licensed by the State to place children for adoption, asks this court to determine whether, in a termination of parental rights proceeding, service by publication upon the natural father of an illegitimate child, where the mother refuses to reveal his identity, is consistent with the requirements of due process. In each of the above cases, the child's mother has surrendered her rights pursuant to N.J.S.A. 9:3-41. Lutheran Social Services would like to place the two infant children for the purposes of adoption as soon as possible. It seeks to terminate parental rights at this juncture so that the adoptive parents are not faced with this problem at the time of adoption proceedings after they have become attached to the child.
N.J.S.A. 9:3-45 requires that notice of adoption proceedings be given to each parent of the child to be adopted, except those parents who have surrendered their rights pursuant to N.J.S.A. 9:3-41 or those whose rights have been terminated "in a separate judicial proceeding by court order." Having secured valid surrenders from the two mothers of the infants presently in its care, Lutheran Social Services is presently seeking to terminate the rights of the two fathers involved.
The facts in each case further illustrate the unique issue which is presented here. In the case of B. the mother refused to give any information to Lutheran Services concerning the identity of her child's father or his whereabouts. The mother signed an affidavit asserting that the father was not involved with her during the pregnancy or after the delivery of the child. Lutheran Services was granted leave to proceed by way of notice through publication and such notice was published on July 16, *345 1979. Lutheran is presently seeking to proceed with termination on the basis of this notice.
The facts of the case of J. are somewhat more involved. Initially, the mother of this child refused to name the father but agreed to serve the necessary papers on him herself. Lutheran Services proceeded in this manner and all necessary papers were prepared and delivered to the mother. In the interim, however, the mother ceased to cooperate and Lutheran Services does not know her present whereabouts. The mother had given the agency some personal information regarding the father, including his age, his employer and the fact that he was not a United States citizen. The agency sought to serve defendant by way of his employer, but the employer refused to cooperate or provide any further information. Lutheran Services wishes to serve the father by way of publication so that it might proceed with termination.
N.J.S.A. 9:2-18 sets forth requirements for an action to terminate parental rights. For the purposes of this section "parent" does not include a father of an illegitimate child. N.J.S.A. 9:2-13. In addition, the statute directs the presiding court to find that a father shall have no right to custody once the court determines that the child is illegitimate. Under the law of New Jersey, it would appear that the natural fathers of these two children are not entitled to notice before termination. In fact, the statute suggests that these men have no rights to be terminated. However, the constitutionality of these statutory sections has been questioned in light of the United States Supreme Court's decision in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). In In re Adoption by A.R., 152 N.J. Super. 541 (Cty.Ct. 1977), the New Jersey court declined to give full consideration to the continued validity of these sections but found that an unwed father had a "right to notice and an opportunity to be heard before his parental rights are terminated." (At 543).
Service of process in termination of parental rights cases is governed by R. 4:93-2(a), which provides: "Service or substituted *346 service upon each person having custody of the child shall be made as provided by R. 4:78." R. 4:78 1 expressly provides: "Service of process in all matrimonial actions shall be made in accordance with the applicable provisions of R. 4:4." Service of process in a termination proceeding is to be made pursuant to R. 4:4, the general rules governing service of process in civil matters, to the same extent that that rule applies to matrimonial matters.
R. 4:78 was amended in 1975, and these amendments were discussed by the Appellate Division in Drobney v. Drobney, 146 N.J. Super. 317 (1977), where Judge Pressler, writing for the court, concluded:
The evident intention of this rule was to permit service in all matrimonial actions pursuant to R. 4:4-4, including its long-arm provisions where applicable if personal jurisdiction were sought, or service pursuant to R. 4:4-5 if in rem or quasi in rem jurisdiction were sought. [at 324-325]
R. 4:4-5 expressly applies to "any res within the jurisdiction of the court," and the rule provides four alternative methods for service if "it shall appear by affidavit of the plaintiff's attorney or other person having knowledge of the facts, that a defendant cannot, after diligent inquiry, be sued within the State." The third alternative method allows service to be made by publication. R. 4:4-5(c). Subsection (c) also requires that a copy of the published notice be mailed to defendant "to his residence or the place where he usually received his mail, unless it shall appear by affidavit that such residence or place is unknown, and cannot be ascertained after inquiry as herein provided."
In matters concerning termination of parental rights of adoption the court's jurisdiction is pursuant to the doctrine of parens patriae. Fantoney v. Fantoney, 21 N.J. 525, 535 (1956). Adoption has been described as an in rem proceeding. In re Neuwirth's Estate, 155 N.J. Super. 410, 421 (Cty.Ct., 1978), citing A. v. M., 74 N.J. Super. 104, 109 (Cty.Ct., 1962). It has been suggested that the better approach would be to describe such *347 proceedings as quasi in rem since "the judgment itself affects a res, but certain persons are entitled to notice under certain circumstances." 7 New Jersey Practice (Clapp, Wills and Administration), § 1803. This distinction is not crucial here, however, since R. 4:4 5 applies to either in rem or quasi in rem proceedings.
It is clear that in this type of action, termination of parental rights, R. 4:4 5 is applicable. The next consideration is whether in these particular cases, service by publication is warranted. The rule provides that its alternative methods of service are "consistent with due process of law," but it should be noted that service by publication is not generally favored. See Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Practically, service by publication is the least effective means of reaching defendants, and for this reason resort to such service is only permitted after diligent inquiry has failed to locate the defendant. R. 4:4 5. The rule specifically sets forth how the inquiry is to be made and it further requires the filing of an affidavit "fully specifying the inquiry made." R. 4:4 5(c)(2).
Our Supreme Court has discussed service by publication in the context of a condemnation proceeding in New Jersey Turnpike Auth. v. Tootle, 59 N.J. 308 (1971). In that case the court held that service of process by publication was improper since the Authority had knowledge of the name of the record title holder of the property in dispute. No affidavit of inquiry was filed showing that this individual could not be located. The court concluded:
There is little doubt on the record presented to the trial court that a reasonably diligent investigation by the plaintiff would have provided sufficient information to facilitate personal service upon persons having a title interest in the property sought to be condemned. Such an investigation was not engaged in and in our view therefore the extraordinary method of service by publication was not available. [at 313]
*348 In the instant cases plaintiff Lutheran Services has filed affidavits setting forth the attempts it has made to ascertain the identity of the two men. In the case of B. the mother refused to provide any information regarding the father of her child and she signed an affidavit to that effect. This in itself precluded Lutheran Services from inquiring further, since without the mother's assistance it would have no way of determining even the identity of the father, let alone his place of residence. The posture of the J. case is slightly different. There the mother initially agreed to cooperate with Lutheran and serve the father herself, pursuant to a court order. However, she did not cooperate as anticipated and Lutheran only had information regarding the father's place of employment. Armed with a few personal facts about the father, Lutheran attempted to contact him through his employer after the whereabouts of the mother became unknown. The father's employer, however, refused to be of assistance and Lutheran Services, was, in effect, back to square one. The names of the defendants are not now known and the information does not appear to be forthcoming. Service by ordinary means would appear to be impossible and within the exception noted above.
Regarding the case of B., since Lutheran Services has published notice pursuant to a court order, it may now proceed with termination. In the J. case Lutheran Services is hereby granted leave to service its notice by publication.