**Salem**

AUGUSTA COUNTY DEPARTMENT OF SOCIAL
SERVICES

v.

UNNAMED MOTHER, et al.

No. 1541-85

Decided September 2, 1986

COUNSEL

Richard C. Erickson, for appellant.

Charles N. Bishop, Jr., for appellee, Unnamed Mother.

Thomas P. McPherson, for appellee, Unnamed Infant.

OPINION

**KOONTZ, C.J.** — By order entered on November 6, 1985, the circuit court held that an entrustment agreement entered into by the Augusta County Department of Social Services (department) and the natural mother of a child born out of wedlock was invalid, and ordered the child returned to the mother's custody over the objection of all parties. The department filed this appeal.

### Procedural Background

The circuit court's order of November 6, 1985, came after a procedural process which began almost three years previously. At that time the department filed a petition in the Augusta County Juvenile and Domestic Relations District Court seeking (1) the termination of the natural father's parental rights pursuant to Code §§ 16.1-241(A)(4) and 16.1-283 and (2) approval of the mother's entrustment agreement, thus making the child eligible

for adoption. That entrustment agreement, concerning the child born on November 18, 1982, was entered into on December 1, 1982. It granted custody to the department with the right to place the child for adoption. On the same day the mother executed an affidavit that she knew the father's identity but refused to reveal it to the department. Subsequent to the filing of that petition, the juvenile court appointed an attorney to represent the mother, and a guardian *ad litem* to represent the child. Hearings were held, and on April 26, 1983, after declining the request of the department for the entry of an order of publication against the natural father, the juvenile court entered its order, which provided in pertinent part as follows:

> The Court believing that the resolution of the issue, of whether the facts of this case establish that the identity of the father is not reasonably ascertainable, is best left to the Circuit Court which rules on the proposed adoption, and further having some question as to this Court's jurisdiction to terminate the parental rights of a parent who neither is before the Court nor has executed any entrustment agreement, but whose identity is known to one of the parties, doth ORDER as follows: Insofar as the mother's rights are concerned the Court approves the entrustment agreement, terminates the parental rights of the mother, and appoints the Department custodian of the child with leave to place for adoption and to consent to the adoption conditioned upon the Department's responsibility to call to the attention of the Circuit Court which hears the adoption the father's situation and subject to the ruling of that Court on the issue of the parental rights of the father. This Court declines to terminate the parental rights of the father.

The department appealed to the circuit court.

Hearings were held in that court, and the then judge of the circuit court found that the identity of the father was reasonably ascertainable, and entered an order of publication on March 6, 1984. Prior to actual publication, the court entered another order on March 14, 1984, granting the motion of the mother to stay the order of publication pending a timely appeal. She filed a notice of appeal on April 5, 1984, but never perfected the appeal. At that point the case became what can only be described as inactive, un-

til hearings were again held in 1985.[1] The final order of November 6, 1985, held the entrustment agreement to be invalid "under Virginia Code § 63.1-204.D because the identity of the natural father is reasonably ascertainable, the father did not execute the entrustment agreement, and the father was not provided notice of the agreement." The court ordered that custody of the child be returned to the mother. This order was objected to by the attorneys for the department, the mother and the child. The order was stayed pending a decision in this court.

### Factual Background

The pertinent facts are not in dispute. The mother, a divorcee with four legitimate teenage children in her custody, gave birth to the child in question out of wedlock on November 18, 1982. Prior to the birth, she contacted the Augusta County Department of Social Services and sought assistance in placing the then unborn child for adoption. An entrustment agreement was entered into by the department and the mother in the good faith but mistaken belief that the identity of the natural father would not have to be revealed. The mother signed an affidavit stating that she knew the identity of the father but refused to reveal his identity. The father has no knowledge of the existence of the child or the proceedings concerning the custody of the child.

The child was placed in a pre-adoptive home shortly after birth and has remained in that home to this time. The proposed adoptive parents have been unable to proceed with adoption because of this proceeding, and specifically because the rights of the natural father have not been resolved or terminated. The mother has never seen the child, and while refusing to identify the father, continues to desire that the child be adopted. The teenage children of the mother are aware of the existence of the child. They know the natural father, but are unaware that he is the father of the child. The father is a married family friend who has children by that marriage.

The mother's stated reason for refusing to reveal the identity of the father was that: "I am the only one who really knows the whole story. And I am doing what I think is best for my children,

---

[1] No issue of the finality of the March 6, 1984, order is raised in this appeal and in light of our holding, it is rendered moot.

myself and the baby." She further explained that, (1) it would be difficult for her children if they learned that the family friend was the father of the child; (2) the father would not want custody or a relationship with the child; (3) her ex-husband would use this situation to seek custody of her legitimate children; and (4) her right to privacy would be violated.

The department has raised numerous issues in this appeal. Many of these invite us to give advisory opinions. We decline that invitation. The two appropriate issues are:

(1) Whether the December 1, 1982 Adoptive Entrustment Agreement was invalid under Virginia law, and if so, whether the Department is barred from proceeding further with this action, or entitled to proceed with an order of publication entered against the unknown father.

(2) Whether the identity of the father is reasonably ascertainable under the standard set forth in the Code of Virginia.

### Discussion

The trial court found that the entrustment agreement was entered into in good faith by the department and the mother in the belief that it would be approved (by the appropriate court pursuant to Code § 16.1-241(A)(4)) based on the affidavit executed by the mother. No issue of fraud or misrepresentation by the department was raised below and we do not consider it here. Rule 5A:18. More importantly, the mother does not seek to invalidate the agreement now, but rather merely seeks to have the child adopted without notice to the father. Accordingly, we accept as fact that the agreement was executed in good faith by both parties to it. The trial court then found pursuant to Code § 63.1-204(D) that the entrustment agreement was invalid on the grounds that the father's identity was reasonably ascertainable, and he was not provided notice of nor did he execute the agreement. The trial court declined to "cure the lack of notice to the natural father" by an order of publication, and instead ordered the child returned to the mother's custody over her objection and the objections of the department and the child's guardian *ad litem*. This was error and we reverse.

Code § 63.1-204 provides the general statutory scheme for placing children for adoption. It is specific in its terms and provides procedural safeguards for the child, the parents, the child-placing agency and the adoptive parents, and thus avoids constitutional concerns of due process. Code § 63.1-204(D) is controlling as to the issues in this appeal and provides in pertinent part as follows:

> An entrustment agreement for the termination of all parental rights and responsibilities with respect to the child shall be valid notwithstanding that it is not signed by the father of a child born out of wedlock if the identity of the father is not reasonably ascertainable, or if such father is given notice of the entrustment by registered or certified mail to his last known address and such father fails to object to the entrustment within twenty-one days of the mailing of such notice. An affidavit of the mother that the identity of the father is not reasonably ascertainable shall be sufficient evidence of this fact, provided there is no other evidence which would refute such an affidavit. The absence of such an affidavit shall not be deemed evidence that the identity of the father is reasonably ascertainable. For purposes of determining whether the identity of the father is reasonably ascertainable, the standard of what is reasonable under the circumstances shall control, taking into account the relative interests of the child, the mother and the father.

This statute by its very terms recognizes that the unmarried natural father has parental rights, though limited, which must be considered and dealt with by means of due process before the child can be adopted. Thus, we need not delve into the myriad of United States Supreme Court cases (cited by the department) which deal with the intricate constitutional issues involved in related situations. *See, e.g., Lehr v. Robertson,* 463 U.S. 248 (1983); *Caban v. Mohammed,* 441 U.S. 389 (1979); *Quilloin v. Walcott,* 434 U.S. 246 (1978); *Stanley v. Illinois,* 405 U.S. 645 (1972). The controlling determination becomes whether under the facts of this case the identity of the father is "reasonably ascertainable." We are faced with a case of first impression in that determination as no Virginia authority has been cited to us by the parties and our independent research reveals none.

▆ We are persuaded by common sense alone that granting an unmarried natural father rights in these cases would be a futile act if the mother alone could control the ascertainability of the identity of the father. "We will not attribute to the General Assembly an intention to create such an illogical" statutory scheme. *Virginia Beach Beautification Commission v. Board of Zoning Appeals*, 231 Va. 415, 418, 345 S.E.2d 899, 902 (1986). Rather we believe that where the mother knows the identity of the father but refuses to reveal his identity, the father's rights in the child attach and cannot be terminated without due process notice. Code § 63.1-204(D) specifically provides for that notice by registered or certified mail to his last known address in cases where his identity is revealed. While the statute does not address the refusal to reveal the identity of the father, the courts are provided ample means to protect the rights of the father and the child by the use of an order of publication pursuant to Code § 8.01-316.2. *See also Lutheran Social Services of New Jersey v. Doe*, 172 N.J. Super. 343, 411 A.2d 1183, 1186 (1979) (holding in a parental rights termination proceeding, that service by publication upon natural fathers was consistent with due process requirements where the mothers refused to reveal the identities of the fathers of their illegitimate children).

The mother urges us to find that the identity of the father is not reasonably ascertainable as contemplated by Code § 63.1-204(D) based on the following language of that statute:

> For purposes of determining whether the identity of the father is reasonably ascertainable, the standard of what is reasonable under the circumstances shall control, taking into account the relative interests of the child, the mother, and the father.

Her position would render that language meaningless. Without knowledge of the identity of the father, the court would have no means to consider the relative interests of the child and the father. The mother's interests alone, regardless of how understandable they may be, would be controlling. Such is clearly not contemplated by the statute nor is it consistent with the potential best interests of the child and the due process rights of the father.

▆ An out-of-wedlock birth does not automatically bar the subsequent development of a proper relationship between the child

and the father. At a minimum, both should have the opportunity by adequate notice to determine what, if any, relationship is desired before termination of parental rights occurs. Furthermore, the relationship between natural parents and their children should be protected by the state where possible, feasible and appropriate. Fair play demands that the unwed mother not be permitted to be the sole arbitrator in cases where she knows the identity of the father but refuses to reveal it. Perhaps more importantly, in this particular case, the return of this child to a mother who since his or her birth has steadfastly refused to assume custody and has urged adoption would clearly not be in the child's best interests.

Accordingly, the November 6, 1985, order of the circuit court is reversed and this case remanded with instructions to the court to enter the appropriate order of publication after granting the mother the reasonable opportunity to reveal the identity of the father so that notice of the entrustment agreement can be given to him pursuant to law.

*Reversed and remanded.*

Duff, J., concurred.

Benton, J., dissenting.

I believe that the trial court was correct in its determination that the entrustment agreement was invalid. The goal of the entrustment agreement was to place the child in an adoptive home; however, the mother's execution of the entrustment agreement was premised upon the understanding, fostered by the Department, that she would not have to divulge the identity of the child's father, which is known only to her. Our statutes will not permit the termination of the parental rights of a father if his identity and location are reasonably ascertainable, without notice to him by registered or certified mail to his last known address. Code § 63.1-204(D). Inasmuch as the Department made a commitment to the mother which is incompatible with the statutory means for accomplishing the child's adoption, the court was obligated to rule the agreement invalid when the mother refused to divulge the identity of the father.

I believe that the majority opinion's solution to the dilemma posed by this case is faulty for several reasons. Unlike the statute construed in *Lutheran Social Services v. Doe*, 172 N.J. Super.

343, 411 A.2d 1183 (1979), Code § 63.1-204(D) does not provide for constructive notice by order of publication. Code § 8.01-316(2), our publication statute, does not permit service by publication against a father who is a resident of the Commonwealth and whose identity and address are known or reasonably ascertainable. Furthermore, because notice by publication is constructive only, the statutes must be strictly construed. *Steinman v. Jessee*, 108 Va. 567, 572, 62 S.E. 275, 278 (1908). The important interests of both the child and the father in having the father make a decision regarding his child's future and his relationship with his child, require notice which, under the circumstances, will comport with due process. At a minimum the father, who is apparently unaware that his child exists, is entitled to the process that he is due under Code § 63.1-204(D). The notice that would be given by an order of publication is an inadequate substitute for the notice by mail which Code § 63.1-204(D) requires. *See Robinson v. Hanrahan*, 409 U.S. 38 (1972).

The Supreme Court has recognized that under certain circumstances a father of an illegitimate child is entitled to substantial protection under the Due Process clause:

When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he "act[s] as a father toward his children." But the mere existence of a biological link does not merit equivalent constitutional protection. The actions of judges neither create nor sever genetic bonds. "[T]he importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in 'promot[ing] a way of life' through the instruction of children. . . as well as from the fact of blood relationship." The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions

to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a State to listen to his opinion of where the child's best interests lie.

*Lehr v. Robertson*, 463 U.S. 248, 261-62 (1983) (citations omitted).

I believe that this child's father, who has not had the opportunity to demonstrate whether he desires to provide care, custody and love to his child, because the very fact of the child's existence has not been communicated to him, is entitled to those substantial protections before the Commonwealth severs his interests and status with respect to his child. Furthermore, I believe that the child is entitled to have the father notified in the manner provided by statute before the child's status with respect the father is terminated by the Commonwealth.

In order to meet constitutional standards and to accord finality to decisions notice must be reasonably calculated under all the circumstances to inform the father of the pending action and to afford him an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950).

[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.

*Id.* at 315. Publication is inadequate in this case, precisely for the reason that it is not calculated to reach the father who is entitled to better notice.

Finally, while I recognize that this case presents a difficult situation for the mother, for the potential adoptive parents with whom the newborn child was placed, and for this court, there is nothing in this record which suggests that the mother will not be an appropriate parent for the child should she continue to be unwilling to divulge the identity of the father in order to facilitate what may ultimately be in the child's best interest. The mother has requested this Court to hold that the identity of the father is not reasonably ascertainable, or, in the alternative, to affirm the judgment of the circuit court. I would affirm the judgment.