**Salem**

UNKNOWN FATHER OF BABY GIRL JANET

v.

DIVISION OF SOCIAL SERVICES OF THE CITY OF

LYNCHBURG, et al.

No. 1572-91-3

Decided September 22, 1992

COUNSEL

Patricia R. Black (Edmunds & Williams, P.C., on brief), for appellant.

Walter C. Erwin (City Attorney's Office, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—The guardian ad litem for Unknown Father (unknown father) appeals an order of the Family Court for the City of Lynchburg (family court) terminating his parental rights concerning

an infant female child (hereinafter referred to as Baby Girl Janet). Through his guardian ad litem, unknown father contends that the notice of the termination proceedings by order of publication was insufficient to confer jurisdiction in the family court to terminate his parental rights. He further contends that the family court erred in finding, pursuant to Code § 16.1-283(C)(1), that he had failed, without good cause, to communicate with Baby Girl Janet for twelve months following her placement in foster care. The essence of unknown father's contentions is that without knowledge of the child's birth or notice of the child's placement in foster care, "good cause" existed for his failure to communicate with the child. For the reasons that follow, we affirm the family court's termination of unknown father's parental rights.

## I. Procedural and Factual Background

The pertinent facts are not in dispute. Baby Girl Janet was born on November 20, 1989 in Lynchburg. Two days later, the child's unwed mother executed an entrustment agreement for permanent surrender of the child to the Division of Social Services of the City of Lynchburg (social services) for the purpose of adoption. Social services accepted custody of the child and on January 18, 1990, filed petitions in the family court requesting approval of the entrustment agreement, termination of the parental rights of both parents, and approval of a foster care plan that provided as its goal the adoption of the child. A hearing on these petitions was scheduled for March 16, 1990. Notice of this hearing was given to the unknown father by order of publication. This notice was published in a local newspaper and contained adequate and appropriate information concerning the birth of the child and the nature of the proceedings, but omitted the name of the child's mother.

Unknown father did not appear at the hearing on March 16, 1990. The child's mother signed an affidavit stating that the identity of Baby Girl Janet's father was unknown and not reasonably ascertainable. Unknown father's court-appointed guardian ad litem objected to the termination of unknown father's parental rights on the ground that unknown father had not been given sufficient notice of the proceedings. The family court made no decisions regarding the foster care plan or the termination petitions as they related to unknown father and continued those issues for an additional hearing until June 6, 1990. By order entered on April 17, 1990, the family court approved the entrustment agreement and the foster care service plan as related to the mother,

terminated the mother's parental rights and placed Baby Girl Janet in the custody of social services for adoption.

Thereafter, at the June 6, 1990 hearing, Baby Girl Janet's mother testified that she did not know the identity of the child's father. She testified that she "had numerous sexual partners around the probable time of conception, that she was presently unable to identify the same, and that she did not notify any of said partners of her pregnancy or of the child's birth." Other evidence established that, during her pregnancy, the child's mother continued to reside in Lynchburg and to work at her regular job. Unknown father did not appear at this hearing. At its conclusion, the family court permitted social services to amend its termination petition and to delete the request for the termination of unknown father's parental rights, and dismissed that portion of the petition "without prejudice."

On June 22, 1990, the family court rendered a written opinion that the identity of the father of Baby Girl Janet was unknown and not reasonably ascertainable. Thereafter, on July 31, 1990, the family court approved the foster care plan that contained as its goal the adoption of Baby Girl Janet in regard to the unknown father.

Social services made no further attempt to identify the child's father or to notify him of the child's circumstances until approximately ten months later. On April 19, 1991, social services filed petitions in the family court seeking termination of unknown father's parental rights pursuant to Code § 16.1-283 and approval of a foster care service plan that contained as its goal the adoption of the child. A hearing on these petitions was scheduled for June 19, 1991.

In anticipation of this hearing, on May 9, 1991, social services caused to be published an order of publication in a Lynchburg newspaper giving notice of the termination proceedings to the "Unknown Father of Baby Girl Janet." The order of publication was published once a week for four consecutive weeks. The publication provided, in pertinent part:

Commonwealth of Virginia Lynchburg Family Court Commonwealth of Virginia, in re Baby Girl Janet Lynchburg Division of Social Services v. Unknown Father of Baby Girl Janet, the daughter of [natural mother], the child was born on November 20, 1989, in Lynchburg, Va. at Virginia Baptist Hospital.

The publication further described the nature of the proceedings and ordered the unknown father to appear before the family court "to protect his interests on or before 6-19-91 at 2:00 P.M."

Unknown father did not appear at the June 19, 1991 hearing. However, his guardian ad litem again appeared and objected to the termination of his parental rights. By final order entered on August 21, 1991, the family court found that unknown father of Baby Girl Janet, without good cause, had failed to maintain contact with and to provide or substantially plan for the future of the child for a period of twelve months after the child's placement in foster care. The family court further found that unknown father had not come forward since the child's birth to provide nurturing, support or care for the child. Pursuant to Code § 16.1-283(C)(1), the family court terminated the parental rights of unknown father and approved the foster care service plan containing as its goal the adoption of Baby Girl Janet.

Baby Girl Janet was represented in these proceedings by a guardian ad litem. That guardian made no objection to the termination of the parental rights of the child's unknown father.

Baby Girl Janet is currently in an adoptive placement. The identity of her natural father remains unknown.

## II. Discussion

The record here presents a factual case where the unwed mother of the child to be adopted is unable, rather than unwilling, to identify the child's father. *Cf. Augusta County Dep't of Social Servs. v. Unnamed Mother*, 3 Va. App. 40, 348 S.E.2d 26 (1986) (notice of termination proceedings by order of publication required where unwed mother knows but refuses to reveal identity of father). The mother's testimony and her affidavit establish that the regrettable circumstances surrounding the conception of this child resulted not merely in the mother being unable to identify the father from among "numerous sexual partners" but, also, in her inability to identify that group of sexual partners from which at least a potential father might be identified. Thus, the unknown father here is a complete stranger to the child as well as to the mother.[1] Accordingly, because the identity of the father

---

[1] On brief, unknown father's guardian asserts that "Baby Girl Janet has a father who really exists and who might be a terrific parent. Unfortunately, Baby Girl Janet's father doesn't know he might be a father. With the possible exception of the mother, no one knows the father's name and no one knows how to find him." We disagree. All that can accurately be said on the facts of

is unknown, the issues raised in this appeal are controlled by whether the identity of the unknown father is "reasonably ascertainable," and if not reasonably ascertainable, what notice, if any, he is entitled to receive to protect his interests in these parental termination proceedings. *See Norfolk Div. of Social Servs. v. Unknown Father*, 2 Va. App. 420, 345 S.E.2d 533 (1986) (recognizing right and duty of guardian ad litem to protect interests of unknown father by appeal). In this context, we need not decide the extent to which an unknown father has parental rights, if any, under the facts presented by this appeal. Rather, we will assume that the unknown father had parental rights, though limited, that he failed to exercise prior to the termination of those rights by the family court.

 Code § 16.1-279(B), in effect at the time of these proceedings,[2] is part of a comprehensive statutory scheme for the termination of parental rights and the adoption of children consistent with due process for parents and children. This Code section authorizes the appropriate court, including the family court, to terminate the parental rights of a parent when, as here, a public agency such as social services seeks to gain approval of a permanent entrustment agreement. In pertinent part, where only one parent has executed the entrustment agreement, this Code section provides that:

> The parental rights of the remaining parent may be terminated even though that parent has not entered into an entrustment agreement if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) the identity of the parent is not reasonably ascertainable or (ii) the identity and whereabouts of the parent are known or reasonably ascertainable, and the parent is personally served with notice of the termination proceeding pursuant to Code § 8.01-296 or § 8.01-320, or (iii) the whereabouts of the parent are not reasonably ascertainable and the parent is given notice of termination proceedings by certified or registered mail to the last known address and such parent fails to object to the proceedings within twenty-one days of the mailing of such notice or (iv) the whereabouts of the parent are not reasonably ascertainable and the parent is given notice of termination proceedings through an order of

this case is that the child *had* a father. There is no evidence to suggest that the father is even still alive.

[2] Code § 16.1-279 was repealed effective July 1, 1991. Its pertinent provisions now appear in Code § 16.1-278.3.

publication, published at least once per week in a newspaper having general circulation in the area for a period of four weeks, and such parent fails to object to the proceedings.

The determination of whether the identity of a parent is "reasonably ascertainable" pursuant to Code § 16.1-279(B)(i) is guided by a statutory standard contained within the same comprehensive statutory scheme. Code § 63.1-204, authorizing a licensed child-welfare agency such as social services to accept custody of a child entrusted to it pursuant to an entrustment agreement executed by one or both parents, provides in pertinent part that:

An affidavit of the mother that the identity of the father is not reasonably ascertainable shall be sufficient evidence of this fact, provided there is no other evidence which would refute such an affidavit. The absence of such an affidavit shall not be deemed evidence that the identity of the father is reasonably ascertainable. For purposes of determining whether the identity of the father is reasonably ascertainable, the standard of what is reasonable under the circumstances shall control, taking into account the relative interests of the child, the mother and the father.

This standard is also found in Code § 63.1-220.2, authorizing a licensed child-placing agency or local board of public welfare or social services to place for adoption and to consent to the adoption of any child properly committed or entrusted to its care for that purpose. *See also* Code § 16.1-263(E) (referring to this standard).

In this case, the family court certified for the record its finding that the identity of Baby Girl Janet's father was not reasonably ascertainable. The record adequately supports this conclusion based upon an application of the statutory standard. The mother's affidavit is unrefuted by any other evidence. At the June 6, 1990 hearing, unknown father's guardian had the opportunity to cross-examine the child's mother when she testified. The mother's testimony establishes her total lack of knowledge of the identity of the father. Under the circumstances surrounding the conception of the child described by the mother, it is reasonable to conclude that the mother does not know the identity of the child's father. Moreover, the mother's testimony fails to suggest even a clue to the father's identity, his whereabouts, or that a reasonable inquiry or search would successfully identify and locate him. Under such circumstances, the identity of the father of Baby Girl Janet is "not reasonably ascertainable."

Having concluded that the family court properly determined that the identity of unknown father of Baby Girl Janet was not reasonably ascertainable, we turn now to determine the notice of the proceedings to terminate his parental rights to which he is entitled under the statutory scheme and consistent with acknowledged principles of due process.

■ "The statutory scheme for the constitutionally valid termination of residual parental rights in this Commonwealth is primarily embodied in Code § 16.1-283." *Rader v. Montgomery County Dep't of Social Servs.*, 5 Va. App. 523, 526, 365 S.E.2d 234, 235 (1988). The family court invoked the provisions of subdivision (C)(1) of this Code section to terminate the parental rights of unknown father in this case. Code § 16.1-283, in pertinent part, provides that:

C. The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

(1) The parent or parents have, without good cause, failed to maintain contact with and to provide or substantially plan for the future of the child for a period of twelve months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship.

■ Code § 16.1-283(C)(3)(a) provides that proof that "[t]he parent or parents have failed, without good cause, to communicate on a continuing or planned basis with the child for a period of twelve months" shall constitute prima facie evidence of the conditions set forth in subdivision (C)(1).

Here, there is no dispute that unknown father has failed to communicate with Baby Girl Janet for over twelve months after the child's placement in foster care. Unknown father has not communicated with the child or the child's mother since the child's birth. Through his guardian ad litem, unknown father asserts, however, that his "lack of actual or constructive notice of the child's existence was 'good cause' for his failure to contact or provide for the child's future for the

twelve-month period proceeding [sic] the termination hearing'' on June 16, 1991. We disagree.

Code § 16.1-283(C) contains no provision for parental notification of termination proceedings for a parent falling within the scope of this Code section. Within the comprehensive statutory scheme, however, the notification requirement is found in Code § 16.1-279(B). Code § 16.1-279(B) sets forth what, if any, parental notification is required before the provisions of Code § 16.1-283(C) may be properly invoked. The notice required under Code § 16.1-279(B) will depend upon the facts of a given case concerning the identity and whereabouts of the parent in question. Where, as here, the identity of the parent whose parental rights are to be terminated is unknown and not reasonably ascertainable, based on the statutory standard in Code § 63.1-204 for making that determination, Code § 16.1-283(C) does not require constructive notice to such parent. Rather, where the court finds upon clear and convincing evidence that it is in the best interests of the child and that the child has been in foster care for a period of twelve months without contact by the unknown parent, the parental rights of such parent may be terminated.

In the present case, the issue of whether termination of unknown father's parental rights is in the best interests of Baby Girl Janet has not been raised. In addition, unknown father was given notice of the June 16, 1991 hearing and he did not appear to assert any right or interest in Baby Girl Janet. Accordingly, we are not presented with the issue of whether the lack of proper and timely notice of a termination proceeding to a parent entitled to such notice would toll the twelve-month period embodied within Code § 16.1-283(C)(1). Rather, we find that unknown father on the facts of this case was given more notice than required by statute or due process.

In reaching its conclusions, the family court was confronted with the dilemma of acting in the best interests of a child whose mother sought the child's adoption by others while, at the same time, protecting the rights of an unknown father. That dilemma is no doubt accentuated by a recognition that children in such circumstances have the best probability of obtaining love and security from adoptive parents, on the one hand, and that children in such circumstances may in fact obtain the love and security from one natural parent who belatedly comes forward to assume the parental role desired and expected of all parents, on the other hand. It may be too simplistic to place the full responsibility for knowledge of a child's birth upon the unwed father

and thus to conclude that such a "father" has little, if any, parental rights concerning a child born out-of-wedlock. On the other hand, protection of the privacy rights of the mother and the child under specific circumstances argue well for not requiring publication to notify a mere biological father so that his rights, if any, may be protected.[3] The courts in this Commonwealth may find some comfort in resolving this dilemma, however, in the provisions of our comprehensive statutory scheme for terminating parental rights.

That statutory scheme provides specific standards by which to determine the identity and whereabouts of a parent so that reasonable notice and opportunity to be heard are provided prior to the termination of parental rights. Here, the family court conscientiously provided more notice to unknown father than was required, and we will not disturb its termination of unknown father's parental rights.

In summary, we hold that the family court correctly determined, pursuant to Code §§ 16.1-279(B) and 63.1-204, that the identity of unknown father of Baby Girl Janet was not reasonably ascertainable. Based upon that determination, the family court further correctly determined, pursuant to Code § 16.1-283(C)(1), that unknown father of Baby Girl Janet had failed, without good cause, to communicate with the child for a period of twelve months after the child's placement in foster care, and properly terminated unknown father's parental rights concerning this child.

For these reasons, the decision of the family court is affirmed.

*Affirmed.*

Coleman, J., and Elder, J., concurred.

---

[3] *See Lehr v. Robertson*, 463 U.S. 248 (1983) (discussing the significance of the biological link between an unwed father and his child). In the present case, we are not presented with a constitutional challenge to the termination of unknown father's parental rights. Accordingly, we do not address a constitutional claim