COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Senior Judge Bumgardner
Argued at Alexandria, Virginia


ANGELA SEGURA

                                              MEMORANDUM OPINION* BY
v.       Record No. 0858-07-4                 JUDGE JAMES W. HALEY, JR.
                                                  FEBRUARY 26, 2008
FAIRFAX COUNTY DEPARTMENT
  OF FAMILY SERVICES


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jane Marum Roush, Judge

Luis A. Perez (Vernon Gutjahr, on brief), for appellant.

Donna R. Banks, Assistant County Attorney (David P. Bobzien,
County Attorney; Peter D. Andreoli, Jr., Deputy County Attorney;
Dennis R. Bates, Senior Assistant County Attorney, on brief), for
appellee.

Darlene R. Langley (Martin & Arif, on brief), Guardian *ad litem*
for the minor child.


I.

INTRODUCTION

Code § 16.1-241(K) grants jurisdiction to consider a petition, by an individual who has

voluntarily relinquished their parental rights, to reverse a prior adjudication confirming that

decision and terminating those rights.  However, the statute continues:  "No such petition shall

be accepted . . . after the child has been placed in the home of *adoptive parents*."  (Emphasis

added).  Code § 16.1-228(5) defines "Adoptive Home" as either a household in which a child

"has been placed for adoption" or one "in which he has been legally adopted."  Appellant Angela

Segura maintains the italicized language in Code § 16.1-241(K) should be interpreted to only

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

incorporate the second definition of "Adoptive Home," that is, a home wherein resides an individual who has already been legally adopted. Accordingly, she argues, the trial court erred in declining jurisdiction where the child had only been placed in the home of adoptive parents, but a final order of adoption had not been entered. We disagree and affirm.

## II.

## FACTS AND PROCEDURAL HISTORY

In September 2002, Segura advised the Fairfax Department of Family Services ("FDFS") that her paramour had sexually molested her four-year-old daughter, the child involved in this appeal (the "child"). Despite a family protective order to the contrary, Segura continued to allow her paramour contact with the child, and by an emergency removal order of the Fairfax Juvenile and Domestic Relations District Court ("the court") of May 21, 2003, custody of the child was granted to FDFS, based upon allegations of abuse and neglect by Segura.

On August 7, 2003, the court found the child to be abused and neglected, and by dispositional order continued custody with FDFS, and ordered Segura to attend and complete approved parenting classes.

On February 3, 2004, the court continued custody with FDFS, and approved a foster care plan with concurrent goals of returning the child home or placement with relatives. Because Segura failed in her rehabilitation, despite being provided reasonable and appropriate services by FDFS, on May 6, 2004 that agency filed a petition for termination of Segura's residual parental rights with the goal of adoption.[1] Faced with a hearing documenting abuse and neglect, and a

---

[1] In addition to not attending rehabilitation programs, Segura continued to live with the paramour, had no known employment, and on May 5, 2003 was sentenced to eleven months in jail, with nine suspended, when a felony charge of shoplifting was reduced to a misdemeanor.

failure of rehabilitation, Segura agreed to voluntarily relinquish her parental rights, and the court by order of July 26, 2004 terminated those rights.[2] No appeal was taken from this order.

Prior to the termination hearing, on April 8, 2004, the child had been placed in the custody of Segura's mother, Blanca, for potential adoption. However, in September 2005, Blanca advised FDFS she did not want to adopt the child. She explained that the child's presence interfered with her schedule of work and continuing education and that she could not protect the child from the interference and influence of Segura.

On February 3, 2006, the child was placed in the home of adoptive parents, where she remains. A foster care plan review dated April 10, 2006 reports:

> [I]t is evident that [the child] has formed a healthy bond with her new mom and dad. She receives much affection and demonstrates her attachment to them . . . . She has met many extended family members and enjoys all the traveling and activities . . . . Upon her adoption, her adoptive parents will apply for her United States citizenship.

On April 12, 2006, Segura filed in the court a petition pursuant to Code § 16.1-241(K) to reverse the July 26, 2004 order terminating her parental rights. FDFS and the guardian *ad litem* for the child both moved to dismiss the petition, arguing the court was without jurisdiction because the child had been prior thereto, on February 3, 2006, "placed in the home of adoptive parents." The court dismissed the petition and the matter was appealed to the Circuit Court of Fairfax County.

The circuit court heard argument on the question of jurisdiction and granted the motion of the guardian *at litem* to dismiss. In so doing, the circuit court stated: "I do think the statutory language [in Code § 16.1-241(K)] means that a petition is untimely if it is filed after the child has

---

[2] The natural father apparently lives in Honduras and has also had his rights terminated.

been placed in the home of adoptive parents. I don't think that requires that the actual adoption be completed." This appeal followed.

## III.

## ANALYSIS

If the jurisdictional limitation sentence of Code § 16.1-241(K) is interpreted as appellant argues, that is, a petition for reversal may only be filed before a final adoption, then that portion of Code § 16.1-241(K) granting the right to file a reversal petition would be rendered superfluous. This is true because a final adoption terminates any rights of the biological parent. Read as appellant urges, Code § 16.1-241(K) would merely restate long established law: the biological parent of a child finally adopted has no standing whatsoever with respect to that child.

That proposition has been repeatedly stated. "A child by adoption for 'all intents and purposes' is the child . . . of the adopting parent . . . ." Dickinson v. Buck, 169 Va. 39, 43, 192 S.E. 748, 750 (1937) (quoting then Code § 5333). Such language remains in current Code § 63.2-1215: "Any child adopted . . . shall . . . after the entry of the final order . . . be, to all intents and purposes, the child of person or persons so adopting him . . . ." In F. E. v. G. F. M., 35 Va. App. 648, 670, 547 S.E.2d 531, 542 (2001) (*en banc*), we granted the natural father the right to challenge a final adoption on the grounds of intrinsic and extrinsic fraud; however, we further held that the natural father, until and unless the final adoption was set aside, had no standing to request the appointment of a guardian *ad litem* for or visitation with the child. We cited Code § 63.1-233, the predecessor statute to Code § 63.2-1215. Id. at 670-71, 547 S.E.2d at 542. In Carter v. Carter, 35 Va. App. 466, 468, 546 S.E.2d 220, 221 (2001), the appellant's child had been adopted by her then husband as a stepfather. When the parties separated, custody of the child was awarded to the stepfather. Id. She argued the trial court erred in not applying a presumption of custody in her favor as the biological parent. Id. This Court disagreed, holding

that "when an order of adoption becomes final, the adoptive parent obtains all the rights and obligations of a natural parent." Id. (citing Frye v. Spotte, 4 Va. App. 530, 533, 359 S.E.2d 315, 317 (1987)).

Thus, the phrase "adoptive parents" in Code § 16.1-241(K) must be interpreted to describe, as set forth in Code § 16.1-228, the residence "of any natural person in which the child resides as a member of the household and in which he has been placed for the purposes of adoption." We are bound, where possible, to give meaning to every word of a statute. See Monument Assocs. v. Arlington County Board, 242 Va. 145, 149, 408 S.E.2d 889, 891 (1991); Hodges v. Commonwealth, 45 Va. App. 118, 126, 609 S.E.2d 61, 65 (2005) (*en banc*). Statutory phrases are not to "be rendered superfluous." Hodges v. Dep't of Soc. Servs. Div. of Child Support Enforcement, 43 Va. App. 463, 470, 598 S.E.2d 778, 781 (2004); see also Cook v. Commonwealth, 268 Va. 111, 114, 597 S.E.2d 84, 86 (2004); Gray v. Graves Mountain Lodge, 26 Va. App. 350, 356, 494 S.E.2d 866, 869 (1998).[3] To adopt Segura's interpretation of "adoptive parents" would make that phrase superfluous in its statutory context.

Our conclusion is strengthened by reference to definitions found in Code § 63.2-100. There, "adoptive home" is defined as "any family home selected and approved by a parent, local board or child-placing agency for the placement of a child *with the intent of adoption*." (Emphasis added). Congruently, "adoptive placement" is defined as "arranging for the care of

---

[3] We further note that Virginia appellate courts describing that individual or those individuals seeking to adopt a child have repeatedly used the phrases "adoptive parent" or "adoptive parents," in situations where the final order of adoption has not yet been entered. See, e.g., Doe v. Doe, 222 Va. 736, 739, 284 S.E.2d 799, 800 (1981); Ward v. Faw, 219 Va. 1120, 1124, 253 S.E.2d 658, 661 (1979); Crockett v. McCray, 38 Va. App. 1, 8, 560 S.E.2d 920, 923 (2002); Hickman v. Futty, 25 Va. App. 420, 423, 489 S.E.2d 232, 233 (1997); Unknown Father of Baby Girl Janet v. Div. of Soc. Servs., 15 Va. App. 110, 118, 422 S.E.2d 407, 412 (1992); Linkous v. Kingery, 10 Va. App. 45, 54, 390 S.E.2d 188, 193 (1990).

a child who is in the custody of a child-placing agency in an approved home *for the purpose of adoption*." (Emphasis added).

For the foregoing reasons, the decision of the circuit court is affirmed.

<u>Affirmed</u>.
